SAMUEL L. GREENFIELD, Appellant, v. BENJAMIN A. PETTY, PEARL PETTY, ELISHA T. PETTY, BEVERLY B. PETTY and A. LEE KELSEY, CURTIS H. HALL and JAMES C. SHELTON, Judges of the County Court of Clay County, and CLAY COUNTY.—145 S. W. (2d) 367.

Division One, December 11, 1940.

1188

*Lawson & Hale* and *Blackwell & Sherman* for appellant.

*Conn Withers* and *William Aull, Jr.,* for County Court and Judges of the County Court of Clay County.

*James S. Simrall, Alan F. Wherritt* and *Henry C. Chiles* for Benjamin A. Petty, Beverly B. Petty and Elisha E. Petty.

1190

DOUGLAS, J.—This is a suit to quiet title to land in Clay County. Plaintiff alleges that he owned a deed of trust on the land, which was the superior lien; that such deed of trust was foreclosed and he purchased the land; and that the County Court of Clay County asserts that his deed of trust was a junior lien and claims a superior interest.

The County of Clay is a party defendant giving this court jurisdiction. [Constitution, Art. VI, Sec. 12.]

The county and the judges of the county court in their joint answer claim to have loaned school funds which were secured by a first mortgage on the land; that plaintiff's deed of trust was later placed on the same land; that thereafter the school fund mortgage was renewed by substituting a new mortgage and releasing the old one. They allege their prior lien was not extinguished by the substitution of the new mortgage and pray the court to decree that it remains superior to plaintiff's rights and that plaintiff holds the land subject to the lien of their mortgage. The trial court entered a decree holding that plaintiff held the land subject to defendants' school fund mortgage and ordered its foreclosure. Plaintiff has appealed.

The land is a sixty-eight acre tract and for years was owned by Benjamin A. Petty and Pearl Petty, his wife. On April 6, 1908, they borrowed school funds from the county court and gave back to the

county a mortgage on the land to secure the loan. The loan aggregated $3,187.06 of which $1,911.35 belonged to the County School Fund and $1,275.71 belonged to the Aull School Fund of the county. They had as sureties on their loan defendants Beverly B. Petty and Elisha E. Petty.

On May 22, 1922, they borrowed additional funds of $8,300, this time from the Kearney Commercial Bank of Kearney, Missouri. They placed a second deed of trust on the same land to secure this loan which, by its terms, was subject to the school fund mortgage. The date of maturity of this loan was December 15, 1922.

In 1925 a new group of judges of the county court took office. They made an investigation of the outstanding school fund mortgages for the purpose of presenting any from being outlawed by the twenty-year statute. A number were revealed to be from fifteen to nineteen years old. They determined to renew all which were fifteen years old and more. They had the prosecuting attorney prepare new papers on the Petty loan. On April 9, 1923, the Petty mortgage was released on the margin of the record by the clerk of the county court in the following terms: "The notes or bonds described in the within School Fund Mortgage from Benjamin A. Petty and wife, to Clay County having been fully paid and discharged, I hereby acknowledge satisfaction in full and release the property herein conveyed from the lien and incumbrance thereon, by authority of the County Court of Clay County as appears of record in my office this 9th day of April, 1923." The record also shows that the notes were produced and cancelled by the recorder on the same date. At the same time a new school fund mortgage was recorded. This mortgage, dated March 26, 1923 was the same in every respect as the one which was released. It was for the identical principal, $3,187.06, made up of the same amounts from the same two sources, viz.: $1,911.35 from the County School Fund and $1,275.91 from the Aull School Fund. It was secured by the same land. It was executed by the same parties and had the same sureties.

Also on the same date the county court entered on its records the following order:

"Now at this day it appearing to the Court that the (the) Clerk of this court has in hand a receipt from the County Treasurer showing the payment in full of certain school fund mortgages executed by Benjamin A. Petty whereupon it is ordered by the Court that said Clerk satisfy of record in the office of Recorder of Deeds of Clay County, Missouri, said school fund mortgages for $3187.06 executed by Benjamin A. Petty to the County of Clay in the State of Missouri, dated April 6th, 1908, securing certain school fund bonds, to-wit:

"$1,911.35 belonging to the Clay County School fund and $1,275.71 belonging to the Aull School Fund of Clay County, Missouri, upon the following described real estate situated in said Clay County,

Missouri, all in the South ½ of the Northeast ¼, Section 3, Township 52, Range 31, except that part lying on the west side of the right of way of the Hannibal and St. Joseph Railroad, containing in all (68) sixty-eight acres, more or less, said mortgage being of record in the office of the Recorder of Deeds of Clay County, Missouri in Book 99 at page 119.

"Now on this day the Court reloans Benjamin A. Petty and Pearl Petty his wife, the sum of $3,187.06 at the rate of 5% per annum; $1,911.35 belonging to the Clay County School Fund and the sum of $1,275.71 belonging to the Aull School Fund, all in the Clay County, Missouri, upon the following described real estate, to-wit:

"All in the south ½ of Northeast ¼ of Section 3, Township 52, Range 31, except that part lying on the west side (of the) Chicago, Burlington and Quincy Railroad, formerly called the Hannibal, St. Joseph Railroad, containing 68 acres, more or less.

"The Court orders that the warrants be issued for the said sum of $3187.06 on said funds and said loans to be consummated when the prosecuting attorney of Clay County, Missouri, reports the title in fee simple to said real estate, is vested in Benjamin A. Petty and Pearl Petty, his wife, and (th)at the same as (is) free from all liens and encumbrances and that the law has been fully complied with."

When the new mortgage was executed by Benjamin A. Petty he took it to the Bank of Kearney where he executed the acknowledgment before one of its officers who was a notary public. This officer then told Samuel C. Greenfield, plaintiff's father, who was the president of the bank, about the execution of the new mortgage and discussed with him the fact that the bank's $8300 second deed of trust had become a first lien on the land by reason of the release of the old mortgage in the renewal of the school fund loan. Greenfield evidently became interested because he made a trip to the recorder's office and seemingly concluded that the bank's deed of trust was now the paramount lien. Later, on October 10, 1923, he bought this note and deed of trust from the bank for the account of plaintiff, paying the full amount of principal and accrued interest. The note was then past due. This deed of trust was foreclosed October 9, 1937, for default in payment and plaintiff purchased the land. Shortly before the sale the question of the priorities of the respective liens was raised. Then this suit was brought.

This case has been thoroughly and extensively briefed and presented by the counsel of all parties. As a result, and one of great benefit to the court, the issues have been narrowed and emerge with precision and clarity. Appellant submits that if the old mortgage was not released and discharged in equity as well as in fact, then the county was entitled to have the release set aside and the lien of that mortgage restored.

The release of a mortgage is not conclusive as to its discharge, or as to payment of the indebtedness secured by the mortgage. [Seiberling v. Tipton, 113 Mo. 373, 21 S. W. 4; Christy v. Scott, 31 Mo. App. 331.]

It is the general rule that where the holder of a senior mortgage discharges it of record, and contemporaneously takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless it was his intention to do so. This intention may be indicated by the circumstances of the transaction or shown by extrinsic evidence. [98 A. L. R. 843.] "Ordinarily the mere substitution of one form of security for another which has been released or discharged does not, in and of itself, establish the intent of the parties to accept the latter security as full payment for the earlier, where the result would be a loss of priority of lien." [98 A. L. R. 846.]

Appellant agrees that the question of the actual release and discharge of the old mortgage is, according to the equitable doctrines relevant here, one of intent and that intent is a question of fact. The trial court, sitting in equity, found for respondents. Therefore it must have determined this question adversely to appellant. It is our duty to determine the questions of fact anew, as this has been converted into an equity case and especially since much of the evidence is documentary.

Appellant relies chiefly on the marginal release on the record, reciting that the notes had been fully paid and also on the record of the county court that the clerk had and produced in court a receipt from the county treasurer showing payment in full of the secured indebtedness.

However, we must look at all the records. At the same time the old mortgage was released a new mortgage, the same in every detail except as to the date, was placed of record. Under the law the release itself was not conclusive notice of either payment or discharge of the old mortgage. The contemporaneous recording of the new mortgage gives rise to a presumption of a contrary intent—one to preserve and continue the priority of the superior lien. Truly the first order of the county court reciting payment of the old mortgage, read alone, is unequivocal as to payment and discharge. But plaintiff, already with notice of a new mortgage, was under the duty of looking further to determine the intent and purpose leading to the making of the new mortgage in order to entitle him now to claim equities as an innocent person. Had he looked he would have found on the same page with the order reciting payment and in the very next paragraph the order stating the county court has "reloaned" the same amount to the same parties, secured by the same land on the report of the prosecuting attorney that the new mortgage would constitute a first lien on the land as the law requires. The plaintiff

must know that by Sec. 9251, R. S. 1929, Mo. Stat. Ann., p. 7101, the county court had no authority to subordinate its first lien to an intervening one. When read together the orders indicate on their face the intention of the county court to retain its superior lien although they do not correctly represent the facts of the transaction. The statements made must be read in the light of this intention. It has been said many times that orders of boards or courts administered by men not trained in the law must be construed not strictly but according to their intent. [See People v. Lyons, 168 Ill. 396.]

■ Now considering the oral testimony we find appellant (through his father) was expressly advised that the old mortgage had been "renewed." He had actual, as well as constructive, notice of the new mortgage. It is shown that it was made for the purpose of avoiding the Statute of Limitations and there was no actual payment of the old mortgage or reloaning under the new one. No money changed hands. Considering all the evidence we find it shows no intention by the county court to subordinate its senior lien to appellant's junior lien nor do we find anything from which any such intention may be properly presumed.

A review of the evidence also shows that the equities weigh in favor of respondents. It is admitted that appellant was put on full notice of the substitution of the new mortgage as a "renewal" (we take this word from the testimony) of the old one. He made a personal investigation at the recorder's office and then bought the bank's deed of trust which showed on its face that it was subject to the old mortgage. But he bought it believing that the county court had irrevocably blundered in releasing its old mortgage. He is not an innocent party and will not be permitted to speculate to his advantage in another's blunders. [Blanford v. Graff (Mo. App.), 50 S. W. (2d) 739.] When the rights of an innocent party are not involved a mortgagee will be regarded as acting under such a mistake of fact as to entitle him to relief by a restoration of his priority where he has discharged an existing lien and taken a renewal lien in ignorance of an intervening lien against the property. [98 A. L. R. 848.]

The decisions of this State are in line with the general rules stated above. [See Seiberling v. Tipton, 113 Mo. 373, 21 S. W. 4, supra; Christy v. Scott, 31 Mo. App. 331, supra; Scott v. Hill, 330 Mo. 490, 50 S. W. (2d) 110; Saline County v. Thorp, 337 Mo. 1140, 88 S. W. (2d) 183; State ex rel. Breit v. Shain, 342 Mo. 1148, 119 S. W. (2d) 758; Breit v. Bowland (Mo. App.), 127 S. W. (2d) 71.]

■ The record does not support appellant's charges that the county court was guilty of laches. It is conceded the county court had no actual notice of the intervening lien when the new mortgage was taken. Therefore, it cannot be accused of "standing by" while

appellant purchased the deed of trust. Moreover, as we have found the equities against appellant he may not rely on this doctrine which is invoked only in aid of an existing equitable right. [Stanton v. Thompson, 234 Mo. 7, 136 S. W. 698.]

█ Finally, appellant contends that the trial court has no right to breathe life into the old mortgage in the face of Sec. 865, R. S. 1929, Mo. Stat. Ann., p. 1153, providing that no mortgage may be foreclosed after a lapse of twenty years from its maturity unless there is placed of record within the twenty-year period an instrument showing the amount still due. Appellant is mistaken in his premise. In the first place this statute affects not the right but the remedy only. It is a statute merely of repose. [Milby v. Murphy (Mo. App.), 121 S. W. (2d) 169.] Secondly, the lien of the old mortgage was not destroyed but the transaction operated to preserve and continue it as the senior lien and to constitute a renewal of the loan secured by it. [Breit v. Bowland, supra.] The old mortgage has been in law extended by the new mortgage in a manner which more than satisfies the requirements of the statute as to the filing of an instrument showing the amount still due. The purpose of filing such an instrument is to give notice to the public that the mortgage indebtedness has not been paid. [Murphy v. Milby, 344 Mo. 1080, 130 S. W. (2d) 518.] In addition, appellant has not pleaded the defense of limitations.

The judgment is affirmed. All concur.