**LANDMARK BANK,**
**Plaintiff/Appellant,**

v.

**J.V. CIARAVINO, Trustee and Royal**
**Bank Mid-County,**
**Defendants/Respondents.**

**No. 53268.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 22, 1988.

Application to Transfer Denied
July 26, 1988.

Robert C. Jones, Clayton, for plaintiff/appellant.

Terrence F. Moffitt, St. Louis, for defendants/respondents.

SMITH, Judge.

This case reaches the writer on reassignment. We have utilized, without quotation marks, portions of the original opinion which failed of adoption.

Landmark Bank appeals a judgment which granted some, but not all relief requested in its suit for equitable subrogation and to determine priorities among holders on notes secured by deeds of trust on a residence. Landmark also asked the court to set aside a foreclosure sale or, in the alternative, to require an accounting of the proceeds of the sale. The contest is between lienholders. It does not involve the borrower.

Solely for the purpose of clarity the names used in this opinion are those currently being used by the banking companies involved. Some name changes have occurred but the names are insignificant to the legal issues presented.

The appeal does not raise or depend upon any disputed matters of fact. Nor is it claimed that any of the findings of fact of the trial court are unsupported by the evidence which consisted of a stipulation of facts and testimony of witnesses offered by both sides.

Under the circumstances we borrow the operative facts from the stipulation of parties and the findings of fact made by the trial court. Howard J. Danzig and Myrna Danzig (Danzigs), until March 12, 1986, were the owners of a parcel of residential real estate located in St. Louis County, Missouri. On November 10, 1976, Roosevelt Federal Savings and Loan Association recorded a deed of trust from the Danzigs to secure a loan of $43,800 as a first deed of trust. On January 20, 1979, Nationwide Financial Corporation of Missouri recorded a deed of trust to secure a loan of $28,294.06. This was a second deed of trust. On October 10, 1980, defendant Royal Bank Mid–County recorded a deed of trust to secure a loan of $25,000. This was a third deed of trust. On April 28, 1981, plaintiff Landmark Bank recorded a deed of trust to secure a loan of $27,585.68. This was a fourth deed of trust. On April 28, 1981, plaintiff Landmark Bank recorded a deed of trust to secure a loan of $20,000. This was a fifth deed of trust. On April 28, 1981, the Danzigs used money borrowed from Landmark Bank to pay off and obtain a release of the indebtedness to Nationwide Financial Corporation of Missouri. Hence, the second was paid off by money loaned by plaintiff Landmark Bank which was secured by the fourth and fifth deeds of trust.

Prior to making loans to the Danzigs, plaintiff Landmark Bank employed a title

company to search the title. The title company did not find and did not report the existence of the recorded third deed of trust which secured an indebtedness of the Danzigs to Royal Bank. The error of the title company is the source of the dispute between plaintiff Landmark Bank and defendant Royal Bank.

The trial court found that Landmark Bank had no actual knowledge of the existing loan of Royal Bank to the Danzigs, nor of the lien of Royal Bank on the subject property although it was of record providing Landmark with constructive knowledge. Sec. 442.390, RSMo 1986. The Danzigs were not called as witnesses and there is no evidence whether they informed plaintiff Landmark Bank of defendant Royal Bank's note or the third deed of trust. After Nationwide was paid and its lien released, Landmark Bank believed that it held a second deed of trust on the real estate. The Danzig–Landmark Bank deed of trust securing $27,585.68 expressly recited "subject to a first deed of trust." The Danzig–Landmark Bank deed of trust securing $20,000 expressly recited that it was "subject to a first and second deed of trust."

Plaintiff Landmark Bank petitioned the court to find that a portion of the proceeds of its loans to the Danzigs were intended to pay off and obtain a release of the note and second deed of trust from Danzig to Nationwide Financial and to find, as a matter of equity, that Landmark Bank was entitled to a priority over defendant Royal in the amount of money which it had advanced to pay the Nationwide note and deed of trust, $27,619.91. In the alternative, plaintiff requested the court to find the $25,000 indebtedness of Danzig to Royal Bank had been paid by subsequent transactions between Danzig and Royal. Plaintiff alleged payment as a sufficient legal ground to set aside foreclosure of the Royal Bank deed of trust and to order the lien of that deed of trust released of record. Finally, in the alternative to the above findings and judgments the petition alleged

that defendant J.V. Ciaravino as a trustee in the Royal Bank deed of trust should be ordered to account for all proceeds from the foreclosure sale and pay any excess to plaintiff on its liens.

The trial court found plaintiff Landmark Bank's failure to discover Royal Bank's superior lien precluded Landmark from asserting equitable subrogation and found no equitable basis to set aside Royal Bank's foreclosure sale. The trial court ordered defendant J.V. Ciaravino, as trustee, to account for the proceeds of the foreclosure sale. After an accounting was filed, plaintiff Landmark filed objections which were considered, sustained in part and overruled in part. Plaintiff appeals from these judgments.

Some additional facts add to an understanding of the appeal. It appears that Roosevelt Federal Savings and Loan held a purchase money note and deed of trust on November 10, 1976. Nationwide Financial accepted a second deed of trust in June of 1979. This may have been the source of funds by which the Danzigs acquired or financed a business they came to own, Flash Cube, Inc. The priority and sequence of these deeds is not at issue.

On October 10, 1980, defendant Royal Bank Mid–County loaned Flash Cube, Inc., $25,000 and obtained a note in that amount from the corporation. As part of the loan transaction Royal obtained a $25,000 note and deed of trust from the Danzigs on their residence as collateral for the corporation borrowing. Both notes were dated and signed on October 7, 1980. The "master loan" was to Flash Cube, Inc., in the sum of $25,000. The collateral note was in like amount but for the same consideration. The collateral note was payable on demand, and if no demand, then on April 7, 1981. Defendant Royal continued to loan money to the Danzigs. On May 19, 1982, it received a note signed only by Howard Danzig in the amount of $992.41. On May 19, 1982, it received a note in the amount of $15,000 from Flash Cube, Inc. On November 4, 1982, it received a note signed only

by Howard Danzig for $5,702.90. On the same day, May 19, 1982, it received a note for $25,000 signed by Flash Cube, Inc. Finally, on September 12, 1984, it received a note for $36,850 signed by both Howard and Myrna Danzig. According to the evidence the $36,850 note, a collateral note, "represented the balance outstanding under more than one note ... it consists of the balance owing on the $25,000 note that started this and the balance due on some of these other notes." The September 12, 1984 note reflected the total sum due from Flash Cube, Inc., the Danzigs, or both, to Royal Bank. At that time the original $25,-000 master loan note and collateral note and deed of trust were still in existence and no principal payments had been made.

Royal Bank looked to the collateral note secured by what was originally a third deed of trust on the property for payment of the obligations of Flash Cube, Inc. and the Danzigs. On June 23, 1985, on the advice of counsel, defendant Ciaravino, as trustee, held an advertised sale of the collateral note and deed of trust. He did so at a public sale, after publication. Royal Bank bid $10,000 for the note and deed of trust. It is not clear why the sale was held in view of the fact that the collateral note and deed of trust were payable to Royal Bank. It appears it "bought" what it already owned. Defendant Ciaravino, as Vice President of Royal Bank of Mid–County, reported the collateral sale in an *exhibit* which recites: "(1) that the Danzigs on September 12, 1984 executed a promissory note for $36,850 payable on demand, and if no demand is made, then on September 12, 1985"; that the Danzigs pledged with Royal Bank Mid–County, as collateral, a $25,-000 promissory note dated October 7, 1980; and that the $36,850 note, with interest, remains unpaid. It does not recite that the $25,000 note is due and remains unpaid. The exhibit then refers to the uniform commercial code—secured transactions and relevant statutes, reasonable notice of sale and describes a $1,000 payment by Royal Bank Mid–County "the receipt of which is hereby acknowledged." It reports a trans-

fer of the $25,000 note to Royal Bank Mid–County as purchaser. In its answer Royal admitted a $10,000 consideration, not $1,000. None of these events created a credit due the Danzigs.

On December 9, 1985 plaintiff Landmark Bank filed a notice of lis pendens referring to the present law suit to "Determine an Equitable Lien and Enjoin Trustee's Sale."

On February 6, 1986, plaintiff Landmark Bank dismissed Howard J. Danzig and Myrna Danzig, his wife, from the present law suit without prejudice. This apparently occurred because the Danzigs had filed a petition for protection under the Federal Bankruptcy Act. On March 12, 1986 defendant Royal Bank foreclosed on the Danzig $25,000 collateral note and deed of trust. Defendant Royal Bank was the successful bidder at the foreclosure sale. The bank bid $42,000. Defendant Ciaravino testified that he, as trustee, received no money from the bank. On March 17, 1976, Royal purchased the note and first deed of trust from Roosevelt Federal Savings and Loan Association. It paid Roosevelt $45,-487.31. On August 25, 1986 Royal sold the real estate to the present owners for $94,-000.

 It has been said foreclosure under a deed of trust is void in the absence of default according to the terms of the deed of trust. *Petring v. Kuhs,* 350 Mo. 1197, 171 S.W.2d 635 (1943) [7, 8]. Plaintiff invokes this rule of law as a foundation for a claim that the court erred in failing to find that the Danzig—Royal Bank third deed of trust was "satisfied" upon the subsequent execution of a $36,850 note which included the $25,000 note and for the further reason that the $25,000 note was never "funded" by Royal Bank. This claim fails as a matter of law and as a matter of fact. The $25,000 note secured by a third deed of trust on their residence was given by the Danzigs as collateral security for a $25,000 borrowing by their corporation. The loan from Royal Bank to Flash Cube, Inc., was the agreed consideration for the note executed by Flash Cube, Inc., and the note

executed by the Danzigs secured by a third deed of trust on their residence. Further, the note imports a consideration. Section 431.020 RSMo 1986; *Munday v. Austin*, 358 Mo. 959, 218 S.W.2d 624 (banc 1949) [3, 4]. As a matter of fact the only evidence on the issue was that neither Flash Cube Inc., nor the Danzigs ever paid any principal payments on the note. Accordingly, both as a question of law and as a question of fact the court did not err in ruling that the foreclosure sale was not void for failure of consideration or for lack of default of a condition contained in the deed of trust.

Plaintiff Landmark Bank also claims the court erred in failing to apply the doctrine of equitable subrogation. It claims that it loaned the Danzigs $27,585.68 in exchange for a note and what it believed would be a third deed of trust on the property. This deed of trust was intended by Landmark Bank to become a second deed of trust because the proceeds of the loan were intended to be and were utilized to pay the note and second deed of trust held by Nationwide.

The doctrine of equitable subrogation has been applied on several occasions in this state. The basis for the doctrine was stated in *State Sav. Trust Co. v. Spencer*, 201 S.W. 967 (Mo.App.1918) [1] as follows:

> "Subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. The doctrine is one of equity and benevolence, and like contribution and similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice." (Quoting from 37 Cyc. 363).

The cases involving equitable subrogation have applied the doctrine only in very limited circumstances. In *Bunn v. Lindsay*, 95 Mo. 250, 7 S.W. 473 (1888) a lender provided money necessary to pay off a first deed of trust. The lender was unaware of an intervening judgment lien of record. The court refused to allow equitable subrogation and stated its reasons as follows:

> "Why did he not know it? That judgment was spread upon the public records in order that all who might deal with the property might know of its existence. He was not prevented from examining the record or lulled into security by any representation of Paramore, Lindsay, or anybody else. He did not know simply because neither he nor his agent looked that he might see and know. That plaintiff's security was less valuable than he expected it would be when he made the loan was the result of his own negligence, and not of the fault, wrong, or mistake of any other person. Against the consequences of that negligence, for which he has no one to blame but himself, a court of equity cannot relieve him by interfering with the legal rights of others who are without fault." (l.c. 476).

■ *State Sav. Trust Co. v. Spencer, supra*, involved a lender who advanced money to satisfy a first deed of trust upon which foreclosure was threatened. He was to receive a first deed of trust. The holder of the second deed of trust agreed to subordinate his security to that of the lender, which he did. A third deed of trust was noted in the county records as satisfied. In fact that record of satisfaction was obtained through the use of a forged instrument by the borrower. This was unknown to the lender. In that case, involving fraud which caused the public records to be erroneous, the court awarded an equitable subrogation. In determining that subrogation was appropriate the court noted: "But the fact that the relative status or value of defendant's lien will not be changed *does not entitle plaintiff to be subrogated;* but in determining plaintiff's claim to subrogation, the status or relative status of defendant's lien should be considered." (Emphasis supplied). *Id.* at [1]. We interpret this to mean that more is required to support

an equitable subrogation than that the superior liens are no worse off than they were before the subsequent lender advanced his money to retire the senior lien. It would further appear to imply that if the other lienors would be damaged by the subrogation such should not be awarded even in the presence of equitable grounds otherwise sufficient.

*Anison v. Rice*, 282 S.W.2d 497 (Mo. 1955) was a case in which no junior lienors were involved. The lender advanced money to pay off a first deed of trust under threat of foreclosure. He did so at the request of one joint owner of the property who represented that he was the agent for the other joint owner, his mother. In return for the loan the lender was to receive a first deed of trust on the property. The original deed of trust was satisfied but no new deed of trust was executed. The trial court found the son was the agent for his mother and ordered specific performance of the son's agreement. The Supreme Court found the evidence inadequate to establish the son's agency but ordered equitable subrogation to the original deed of trust. In so doing it noted that the mother benefited equally with the son from the lender's actions.

*Baker v. Farmers' Bank of Conway*, 220 Mo.App. 85, 279 S.W. 428 (1926) involved a loan made to satisfy three deeds of trust with the understanding that the resultant deed of trust would be the first lien and a previously existing fourth deed of trust would become a second. After payment of the notes secured by the first three deeds of trust the holder of the fourth refused to subordinate its security. Equitable subrogation was decreed. It is not clear whether the court based its decision upon its conclusion that in fact the first three deeds had been assigned to the new lender or because there was evidence that the holder of the fourth had agreed to subordination and then reneged. Possibly it was based on both. It was there noted that a lender is not entitled to equitable subrogation if he has been placed into the position in which he finds himself because of his "culpable and inexcusable neglect."

It is clear from a review of these cases that equitable subrogation is allowed only in extreme cases bordering on if not reaching the level of fraud. Sec. 442.390, RSMo 1986, provides that documents filed for record with the recorder shall "impart notice to all persons of the content thereof and all subsequent purchasers and mortgagees shall be deemed, in law and *equity*, to purchase with notice." (Emphasis supplied). For courts to allow equitable subrogation where no extreme circumstances are present would be nothing less than a judicial repeal of Sec. 442.390 and would place the lending of money secured by real estate at great risk and insecurity. In none of the cases in which subrogation has been ordered has the lender been allowed to advance ahead of a recorded lien in the absence of complicity by the superior lien holder in obtaining the loan. In *State Sav. Trust Co., supra*, the county records reflected the satisfaction of the superior lien at the time the money was advanced albeit that satisfaction record was the result of criminal conduct by the borrower. In that situation the court found that the lender relied upon the county records in making his loan and that the holder of the "satisfied" lien had sustained no loss in value of his security by the subrogation. The only case involving a lender who failed to accurately determine the state of the public records was *Bunn, supra*, where equitable subrogation was denied despite the fact that the intervening lienor had sustained no diminution in the value of his lien.

▪ In the case before us Royal is totally innocent of any complicity in Landmark's mistake. Whether Royal's actions to protect its security would have been the same as a third or fourth mortgagee rather than the second which the records at the time of foreclosure showed it to be, neither we nor the trial court can assess. Regardless of that, it is Landmark's failure to properly ascertain the state of the Danzig title of which it is presumed to have had knowledge which has caused its dilemma.

The statement in the Danzig–Landmark deed of trust that it was subject to a first deed of trust but which omitted reference to the Royal deed of trust is of no aid to Landmark for at least two reasons. First, it had no right to rely on that statement in view of Sec. 442.390 and normal commercial practice. Secondly, it did not in fact so rely. It had the record searched on its behalf and the title company, Chicago Title Insurance Company, upon which it relied, failed to find that which was clearly revealed on the public records. The record does not establish whether the title company was the agent of Landmark or an independent contractor. This absence in the record arises largely from Landmark's repeated objections, which were sustained, to the relationship between it and the title company. It was Landmark's burden to establish it was entitled to equitable subrogation. Part of that proof was its freedom from negligence. It is presumed to have constructive knowledge of the public records. We need not decide whether its freedom from negligence would under the circumstances here have entitled it to equitable subrogation; it is sufficient to say it has not established that it was in fact free from negligence. The only fact supporting equitable subrogation in this case is that possibly Royal may have sustained no diminution in the value of its security from the actions of Landmark. That fact, if true, is not alone sufficient to invoke the doctrine. *State Sav. Trust Co., supra.*

One other matter deserves comment. As an offer of proof Royal offered evidence that in fact Landmark had title insurance to cover its loans from Chicago Title. Counsel for Landmark, in objecting to evidence of the existence of such insurance, repeatedly stated that "the rights of the insurance company would be subrogated to the plaintiff in this case." In this equitable proceeding the relief to Landmark is a matter of "equity and benevolence" and the basis for the relief sought is the "doing of complete, essential, and perfect justice between *all* the parties without regard to form, and its object is the prevention of injustice." The status of Chicago Title as the insurer of Landmark and its status as the ultimate beneficiary of a decree in favor of Landmark is relevant. It is strange equity indeed, which would protect Chicago Title from the results of its negligence at the expense of Royal, which is totally innocent in the matter.

The trial court, in the exercise of its equitable powers, denied equitable subrogation and we find that determination fully supported by the record. We have reviewed Landmark's challenges to the accounting rendered by the trustee, modified by the trial court, and, as modified, approved by the trial court and find no error.

Judgment affirmed.

SATZ, C.J., concurs.

KAROHL, P.J., dissents in separate opinion.

KAROHL, Presiding Judge, dissenting.

The trial court made the following finding, "19. Landmark's *failure to discover* Royal Bank's superior lien precludes Landmark from asserting equitable subrogation." [Our emphasis]. On the basis of this finding the trial court denied Landmark's claim for relief in the form of equitable subrogation. This finding was an erroneous application of the law. For that reason I respectfully dissent. I would reverse and remand to the trial court for further consideration of Landmark's claim.

Neither of the parties briefed or argued the Supreme Court decision in *Anison v. Rice*, 282 S.W.2d 497 (Mo.1955). The trial court was apparently unfamiliar with this decision of the Supreme Court. *Anison* is important to a proper resolution of the present dispute for the following reasons: First, the doctrine of equitable subrogation was noticed and applied by the court in a case where the remedy was not requested by the plaintiff.

Second, funds loaned by the plaintiff to one of the joint owners of real estate were

used for the intended purpose of paying off an existing note and deed of trust. The note and deed of trust for the new loan were not executed by the other joint tenant. The lender thus had actual notice of a defect it created by dispersing funds without the signature of the other joint tenant. The court found that the other tenant could not be ordered to execute the note and deed of trust because plaintiff failed to prove an agency relationship with the borrowing joint tenant. Accordingly, when the suit was filed there was no lien on the property. By adapting the equitable remedy the court denied the other joint tenant unjust enrichment and restored her to the same position she was in before her note was paid.

Third, the court generally reviewed the doctrine of equitable subrogation. *Id.* at 503. Briefly, the court acknowledged that no general rule can be laid down which would afford a test in all cases for its application. Although the facts did not compare lien priorities the court considered the lien priority of *mortgages* in terms of the doctrine. The Supreme Court observed that, "[b]y means of the payment, the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved, for his benefit and security. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the securities themselves were not delivered over to the person making payment, and even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record." *Id.* at 503. This language fits the facts in the present case. The court also noted Restatement of the Law of Restitution, Section 162, which notes that where the property of one person [Landmark] is used in discharging an obligation owed by another [Danzigs directly, Royal indirectly] or a lien upon the property of another

[Nationwide], under such circumstances that the other [Royal] would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder. In such cases, "... the plaintiff can maintain a proceeding in equity to revive it for his benefit; in such a proceeding the court will create for the benefit of the plaintiff an equitable obligation or lien similar to that which was discharged ...." Comment (a), Section 162, Restatement of the Law of Restitution.

Fourth, the basis of the court's decision in *Anison* is equally applicable to the present facts. Although the facts related only to a single loan and the payment of a single deed of trust the interest of the non-borrowing joint tenant became subrogated to a debt secured by an imposed lien. As a result, application of the doctrine the court created an obligation upon the interest of the non-borrowing joint tenant in front of the record title position.

In the present case, plaintiff Landmark loaned money on the basis of a second deed of trust. The Danzigs signed a note and deed of trust which by its terms was to be a second deed of trust. However, on the venerable authority of *Bunn v. Lindsay*, 95 Mo. 250, 7 S.W. 473 (Mo.App.1888), Landmark was not entitled to equity relief if it failed to discover Royal's deed of trust where "the fault being entirely with plaintiffs' agent *for failure to look* and failure to find the intervening judgment." *Bunn,* 7 S.W. at 476. [Our emphasis]. The facts in *Bunn* are distinguishable on two grounds. First, in *Bunn* there was no fault, wrong or mistake by any other person including the superior lienor. The borrower did not mislead the lender as in the present case the Danzigs mislead Landmark. Second, and of greater importance, Landmark did look. A title company was retained either by the Danzigs or Landmark to issue a title report. Landmark, therefore, was entitled to rely on the report of a reputable title company where there is no contention, nor any evidence to support

a finding, that it was negligent in relying on the report. Under these circumstances the fault was not "entirely with plaintiff" or "plaintiff's agent." It is unlikely that a title company was an agent of Landmark. In the present case it was either an independent contractor or, if an agent, the agent of the Danzigs who affirmatively mislead Landmark in failing to disclose the Royal lien.

The majority opinion cites *State Sav. Trust Co. v. Spencer*, 201 S.W. 967 (Mo. App.1918), *Baker v. Farmers' Bank of Conway*, 220 Mo.App. 85, 279 S.W. 428 (1926) *Anison* and *Bunn*. Another significant case involving the doctrine is *Greenfield v. Petty*, 145 S.W.2d 367 (Mo.1940). In *Greenfield*, plaintiff sought equitable subrogation as the holder of a note and deed of trust who refinanced an existing obligation and recorded a new note and deed of trust which was identical with the first deed of trust which had been marked paid and released. The Supreme Court noted, "the general rule that where the holder of a senior mortgage discharges it of record, and contemporaneously takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless it was his intention to do so." *Greenfield v. Petty*, 45 S.W.2d at 370.

From these cases, including *Anison*, we learn that the doctrine of equitable subrogation has been recognized and applied and is a part of the common law of this state. It is a doctrine of equity. As such, it is a benevolence. It may be applied to prevent an injustice. It is not necessarily based on contract or privity. As any equitable remedy it is not a matter of right, 70 A.L.R. 1396, 1397, but rests upon the principles of natural equity. It has been granted to the extent a subsequent lender loans money to pay off a superior lien where the lender intends to have a superior lien and "denial of the right would be contrary to equity and good conscience." *State Sav. Trust Co. v. Spencer*, 201 S.W. at 969.

"Subrogation not being a matter of strict right, but purely equitable in its nature, dependant upon the facts and circumstances of each particular case, no general rule can be laid down which will afford a test in all cases for its application." 70 A.L.R. 1397; *Anison v. Rice*, 282 S.W.2d at 503. The right of subrogation has been regarded as resting on the intention of the parties, i.e., borrower and lender, that the latter's securities shall be a prior lien. *Huggins v. Fitzpatrick*, 135 S.E. 19, 20–21 (W.Va. 1926).

Mere negligence of a party advancing money to discharge a prior lien who does not discover other liens does not necessarily bar his right to subrogation as against a junior lienor who is not prejudiced. 70 A.L.R. 1407. On its face, the holding in *Bunn v. Lindsay*, appears contrary. However, as noted the present facts and the facts in *Bunn* are not the same.

Landmark is not disqualified from application of the doctrine for "failure to discover Royal Bank's superior lien." There is no question that: (1) Landmark Bank loaned funds for the express purpose of paying and discharging a second deed of trust held by Nationwide Financial Corporation; (2) the payment was made and the superior lien discharged; (3) Landmark Bank was unaware of the recorded Royal third deed of trust because: (a) Danzig failed to disclose the Royal deed of trust and affirmatively told Landmark it would have a second deed of trust and, (b) because the title company failed to report its existence; (4) Royal was not prejudiced by the payment and will not be prejudiced by applying the doctrine of equitable subrogation to the extent of Landmark's loan which paid Nationwide; (5) Royal was enriched by its advanced lien, and, (6) application of the doctrine will effect the intention of Danzigs and Landmark Bank without prejudice to the position of Royal on the date Nationwide Financial was paid. The holdings in *Anison* and *Greenfield* dispose of any absolute prohibition of application of the doctrine because of the provisions of Section 442.390 RSMo 1986 and previous similar statutes.

The majority opinion emphasizes the language of Section 442.390 RSMo 1986 regarding constructive notice. It concludes that Landmark is not entitled to equitable subrogation because the recording statute grants a priority which should not be denied by applying the doctrine except in "extreme circumstances." It is not clear what extreme circumstances may be. However, in *Anison* the doctrine was applied in contradiction to Section 442.390 where the same elements were considered: a misrepresentation of authority by the borrower, payoff of an exiting note and deed of trust which served to advance the non-borrowing joint tenants' interest, an intention of the lender and borrower to payoff a superior lien, and unjust enrichment under these circumstances. Clearly, Royal was not prejudiced and its lien position was not "at great risk and insecurity." Royal was never at risk, it only benefited. The application of Section 442.390 to "law and equity" merely covers suits at law and in equity, such as an equitable mechanics lien suit where priorities are an issue. In *State Sav. Trust Co. v. Spencer*, 201 S.W. 967 (Mo.App.1918) a lender was advanced by application of the doctrine above a known superior lien. The integrity of the recording statute was not violated. There was no resulting "great risk and insecurity." Further, contrary to the observation in the majority opinion, there was no "complicity by the superior lien-holder in obtaining the loan." The recorded lien-holder who was actually noticed to the new lender was wholly unaware of the transaction. The fault was wholly in a deceptive act of the borrower, not unlike the borrower in the present case.

It is not clear why Landmark had no right to rely on the Danzigs' statement that they were giving a second deed of trust where the statement was supported by an opinion of a reputable title company. Nor is it clear that Landmark had the title searched. It is more likely that the Danzigs provided a title report in order to obtain the new loans and that the Danzigs retained Chicago Title Insurance Company.

In fact, there is no evidence that Chicago Title Insurance Company was an agent of either the Danzigs or Landmark Bank. It is also more likely that they acted as an independent contractor. In light of *Bunn*, the disqualifying characteristic is failure to look. In the present case Landmark had the benefit of the opinion of a title company which failed to disclose the Royal lien. That fact is not in dispute and, accordingly, there is no issue of negligence on the part of Landmark. The trial court did find that Landmark acted without any knowledge of the existence of the Royal lien and that Landmark would not have made the loans had it not relied on the accuracy of the title opinion.

The majority opinion comments that Landmark objected to evidence of title insurance. If there was title insurance it was irrelevant to any of the issues. If anything, the existence of title insurance was further evidence of prudence on the part of Landmark in contravention of any contention that it was at fault or failed to rely on the statements of Danzig and on the accuracy of the title report. The principles of the doctrine of equitable estoppel do not depend upon whether an insurance company or a third person may be obligated to Landmark. Application of the doctrine of equitable subrogation on the facts would not necessarily protect Chicago Title Insurance Company from an injured party. Royal was enriched, not damaged, by the circumstances. It loaned funds subject to an existing lien protecting an obligation to Nationwide. Nothing that was done in the present case caused Royal damage. The foreclosure and subsequent sale of the real estate was done by Royal when they were aware from the recorded deed of trust between Danzig and Landmark that Landmark believed it had a superior lien.

I would reverse and remand to the trial court to reconsider plaintiff's petition for equitable subrogation because the mere failure to discover Royal's superior lien does not preclude Landmark from having the benefit of the doctrine of equitable

subrogation. Landmark may not prevail because reconsideration is for the trial court. It should not fail on an erroneous finding.