**CONSTRUCTION EQUIPMENT MANAGEMENT, INC., et al., Respondents,**

v.

**DUNHILL DEVELOPMENT CORPORATION, et al., Appellants.**

No. 64783.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 22, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 1995.

Application to Transfer Denied
March 21, 1995.

court's judgment in favor of Richard and Shirley Allan (Allans), holders of a vendee's lien. We affirm.

Dunhill Development Corporation (Dunhill) was formed by Lieberman Corporation for the purpose of developing Dunhill Farms Subdivision (Subdivision). Dunhill ceased doing business on January 3, 1989. At this time, Dunhill was in the process of constructing single-family homes on Lots 2, 31, 46 and 71 of the Subdivision. The home on Lot 45 had been completed and title had been conveyed to Allen and Marilyn Rickard. Dunhill also held title to Lots 2, 31, 46 and 71 on January 3, 1989, but was subsequently divested of these titles through foreclosures.

Following the demise of Dunhill, various contractors filed mechanics' liens and an equitable action was brought under § 429.270, RSMo 1986, to enforce these liens. The trial court enforced the mechanics' liens filed by both Gass and Winter Bros. against Lots 2, 31, 45, 46 and 71. The trial court also enforced the $70,000 vendee's lien the Allans claimed against Lot 31. Appellants, as the homeowners, holders of deeds of trust, and trustees with real property interests in the real estate once owned by Dunhill, appeal from the trial court's decision.

## A. The Mechanics' Liens Claims

Michael R. Allen, Joseph R. Burcke, St. Louis, for appellants.

Byron E. Francis, John S. Metzger, St. Louis, for respondents.

DOWD, Judge.

This appeal involves two separate equitable lien actions. First, Appellants[1] appeal from the trial court's judgment in favor of mechanics' liens claimants Ronald Gass d/b/a Gass Concrete Contractors (Gass) and Winter Brothers Concrete Company (Winter Bros.). Second, Appellants appeal the trial

Gass contracted with Lieberman Corporation, the general contractor, to do the flatwork construction on Lots 2, 31, 45, 46 and 71. As the flatwork contractor, Gass provided the labor and materials for the construction of driveways, garage floors, patios, sidewalks and porches. Gass purchased the concrete for its jobs from Winter Bros. Neither Gass nor Winter Bros. received any payment from Dunhill or Lieberman for the concrete or flatwork. Therefore, each filed mechanic's lien claims against lots in the Subdivision in the following amounts:

1. Dunhill Development Corporation, the owner of Dunhill Farms Subdivision, ceased doing business on January 3, 1989, and therefore is not a party to this appeal. This appeal is brought by: Banker's Trust Company, Boatmen's National Bank of St. Louis, Citicorp Mortgage, Inc., Citizens National Bank of Greater St. Louis, Ben H.

and Mona A. Daud, Deshelter Homes, Inc., Dudley C. Dunlap, Kenneth J. Graham, Walter W. and Regina C. Hammerschmidt, William G. and Sue E. Hynek, Kimberly A. Nauheim, C. Allen and Marilyn D. Rickard, Dale D. and Susan J. Turvey, Alan B. Weber, and Daniel R. Wofsey, Esq.

| Lot | Principal Amount of Gass's Liens | Principal Amount of Winter Bros.' Liens |
|---|---|---|
| 2 | $5,752.35 | $2,113.54 |
| 31 | $6,417.84 | $2,491.72 |
| 45 | $1,804.74 | $ 603.80 |
| 46 | $3,775.94 | $1,368.96 |
| 71 | $5,134.13 | $1,806.26 |

In Points I and III, Appellants allege the mechanics' liens filed by both Gass and Winter Bros. did not meet the requirements of § 429.080, RSMO 1986, as they did not contain "a just and true account of the demand due him or them after all just credits have been given."

An original [general] contractor may make a just and true account by simply submitting a statement of his account without itemization because he contracted directly with the landowner. *Grgic v. Cochran,* 740 S.W.2d 358, 360[3] (Mo.App.1987). However, there is no contractual relationship between the subcontractor and the owner. Thus, the owner cannot be charged with having knowledge of what materials subcontractor agreed to supply under its contract with the general contractor. *Commercial Openings, Inc. v. Mathews,* 819 S.W.2d 347, 350 (Mo. banc 1991). As a result, the subcontractor's lien statements must contain sufficient details and itemizations to allow the owner to investigate and determine the propriety of the claim. *Id.* at 350[2]. In order to be sufficient, a subcontractor's statement must " 'advise the owner or the public of the total amount due and the nature of the materials furnished.' " *Id.* at 350[5], *citing Glasco Elec. Co. v. Best Elec. Co.,* 751 S.W.2d 104, 108 (Mo.App.1988).

Appellants allege the mechanic's lien statements filed by both Gass and Winter Bros. were insufficient because they did not sufficiently specify the quantity and types of materials furnished, nor did they itemize and describe the type of labor performed. Both Gass and Winter Bros. attached copies of the invoices they sent to Lieberman Corporation to their respective mechanics' liens.

First, the invoices Gass attached to its mechanic's lien, using Lot 45 as an example, were in the following form:

| | | | |
|---|---|---|---|
| Porch | 5'6 × 14'8 | 80.68 sq' at $3.25 per sq' | $262.21 |
| Concrete | ½ yard | ½ yard at $56.00 per yard | $ 28.00 |
| ½" Steel | 20' | 20 lineal' at $.38 per lineal' | $ 7.60 |
| Sill | 7'4" | 7.34' at $47.25 per sq' | $ 53.21 |
| Steps | (2) 8' | 16 sq' at $7.25 per sq' | $116.00 |
| Walk | 17' × 5' | 85 sq' at $1.51 per sq' | $128.35 |
| Walk | 59'4" × 4' | 237.36 sq' at $1.51 per sq' | $358.41 |
| Steel ½" | (4) 20' | 80 lineal' at $.38 per lineal' | $ 30.40 |
| Patio | 18' × 16' | 288 sq' at $1.94 per sq' | $558.72 |
| Walk | 35' × 3' | 105 sq' at $1.51 per sq' | $158.55 |
| Walk | 10'2" × 4'6" | 45.76 sq' at $1.51 per sq' | $ 69.09 |
| Steel ½" | (4.5) 20' | 90 lineal' at $.38 per lineal' | $ 34.20 |

Appellants argue these invoices do not contain a sufficient description of the quantity of concrete Gass used because the depth of the concrete is not listed. At trial, Ron Gass testified Gass billed for its concrete flatwork on a per square footage basis. He stated the price per square foot, and the depth of the concrete, were determined by what the flatwork was for, i.e. a basement or a garage. He further testified the standard in the concrete flatwork industry is to bill on a per square footage basis.

Appellants rely heavily on *L. Waldo & Associates v. PVO Foods, Inc.,* 852 S.W.2d 424, 425 (Mo.App.1993), a recent case decided by this court. In *L. Waldo,* the subcontractor's bill merely contained a lump sum amount due for labor and materials, without itemizing what labor was performed or what materials were provided. However, Gass's invoices itemized each flatwork job performed and the square footage each job covered. We find Gass's statements were sufficient to meet the requirements of § 429.080.

Winter Bros. also attached a copy of its invoices to its statements. Its invoices list the amount of concrete provided to Gass in cubic feet. Appellants admitted Winter

Bros.' invoices sufficiently identified the amount of concrete Winter Bros. supplied to Gass. However, Appellants allege Winter Bros.' "hauling charges," as charges for labor, were insufficient because they failed to state the driver's hourly rate and the number of hours it took to deliver the concrete. Curtis Cotner, the general manager of Winter Bros., testified the charge for hauling the concrete is included in the total price per cubic foot of concrete. It is not a separate charge for labor. Cotner further testified this was the standard method of billing within the industry. There was no need for Winter Bros. to list the amount of time it took to deliver the concrete and the driver's hourly rate, as the hauling charge is determined by the cubic feet of concrete delivered, not the amount of time it takes to deliver it. Winter Bros. mechanic's lien statement is sufficient as it advises the owners of the nature of the materials furnished and the total amount due. *See, Commercial Openings*, 819 S.W.2d at 350[5]. Therefore, Points I and III are denied.

■ In Point II, Appellants allege the trial court erred by enforcing the mechanics' liens of both Gass and Winter Bros., Gass's subcontractor, for the same concrete material and by allowing both to recover prejudgment interest on this claim because it resulted in duplicative liability for the same materials. We disagree.

■ Section 429.010, RSMo 1986, specifically provides:

Any person who shall do or perform any work or labor upon, or furnish any material, ... for any building ... under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee contractor or subcontractor, upon complying with the provisions of sections 429.010 to 429.340, shall have for his work or labor done, or materials, ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same is situated....

A materialman, such as Winter Bros., is entitled to a mechanic's lien if he establishes the materials he provided actually went into or were used in the construction of the struc-

ture upon which he seeks to impose his lien. *Kansas City Elec. v. Bomar Elec. Co.*, 581 S.W.2d 411, 413[3] (Mo.App.1979). We find Winter Bros. complied with this requirement. Both Gass and Cotner testified Winter Bros. supplied the concrete Gass used to do all of the flatwork for Lots 2, 31, 45, 46 and 71.

■ Further, § 429.210, RSMo 1986, provides:

The court shall ascertain, by a fair trial in the usual way, the amount of the indebtedness for which the lien is prosecuted, and may render judgment therefore in any sum not exceeding the amount claimed in the demand filed with the lien, *together with interest and costs....*

In *Dave Kolb Grading, Inc. v. Lieberman Corp.*, this court stated, "it would be an incomplete remedy to allow a lien for the reasonable cost of labor and materials but not interest thereon 'after the account should have been paid.'" 837 S.W.2d 924, 933 (Mo. App.1992), *citing Mid–West Eng'g & Constr. Co. v. Campagna*, 421 S.W.2d 229, 233 (Mo. 1967). We find the trial court did not err in granting both Gass's and Winter Bros.' mechanics' liens and awarding prejudgment interest to both. Moreover, the trial court properly limited its judgment in favor of Winter Bros. by stating it could not execute on its mechanic's lien unless "sufficient property of Ron Gass d/b/a Gass Concrete Contractor cannot be found to satisfy said judgment, interest and costs." *See, Maas v. Dreckshage*, 244 S.W.2d 397, 404[9] (Mo.App. 1951) (holding the trial court's decree did not erroneously allow for duplication of liens where it specifically provided the judgments of the materialmen must first be levied against the general contractor and could only be levied against the real estate if the general contractor had insufficient property to satisfy the judgments). Point denied.

## B. The Allans' Vendee's Lien Claim

■ On September 15, 1987, Dunhill acquired title to Lots 29, 30, 31, 69, 70 and 71 of the Subdivision. Dunhill financed its acquisition of these lots through a land acquisition loan from Citizens National Bank of Greater St. Louis (Citizens). Citizens se-

cured the $435,000 land acquisition loan with a first deed of trust against the six lots. This original loan, by its terms, was only for a one-year period. However, Citizens renewed Dunhill's land acquisition loan in September 1988 under the same terms as the original loan.

On October 6, 1988, Dunhill contracted with the Allans for the sale of Lot 31 and the house to be constructed on the lot. The Allans made a $25,000 earnest deposit on this date and another $45,000 earnest money deposit on October 14, 1988. After Dunhill entered into the contract with the Allans, Citizens agreed to loan Dunhill $507,723 to finance construction of the house on Lot 31 and to refinance the $79,750 of the land acquisition loan attributable to Lot 31. On December 9, 1988, Citizens contemporaneously filed a deed of trust securing the new loan for $507,723 and a partial release of the deed of trust securing the acquisition loan.

Dunhill ceased operations on January 3, 1989, and Citizens commenced foreclosure proceedings on January 24, 1989. On February 9, 1989, the Allans recorded a Notice of Equitable Lien, and on February 17, 1989, they recorded a Notice of Lis Pendens. On February 21, 1989, Citizens purchased Lot 31 at the foreclosure sale for $85,000. Construction Equipment then filed an equitable action seeking to enforce its mechanic's lien against Lot 31. In response, the Allans filed a cross-counterclaim to recover their $70,000 in earnest money. The trial court found the Allans' vendee's lien had priority over Citizens' deed of trust and therefore was not extinguished in its foreclosure sale.

In Point IV, Appellants allege the trial court erred in finding the Allans' vendee's lien against Lot 31 had priority over the deed of trust filed by Citizens either on September 15, 1987, or December 9, 1988.

■ First, the Allans had a valid vendee's lien against Lot 31. In *Stanovsky v. Group Enterprise & Construction Co.,* this court held it is a well-established equitable principle that any premature payment of the purchase price of a real estate contract operates as a lien on the property in question *pro tanto.* 714 S.W.2d 836, 838[1] (Mo.App. 1986), *citing Devore v. Devore,* 138 Mo. 181,

39 S.W. 68 (1897). This vendee's lien exists independent of any written agreement. *Id.* at 838[2], *citing Hunter v. Hunter,* 327 Mo. 817, 39 S.W.2d 359[3–6] (1931). Therefore, the Allans were entitled to a $25,000 vendee's lien on Lot 31 as of October 6, 1988, and a $45,000 vendee's lien as of October 17, 1988.

■ The next question is whether the Allans' vendee's lien has priority over Citizens' deed of trust. The deed of trust which Citizens foreclosed on was not filed until December 9, 1988. However, Citizens argues the priority of its September 1987 deed of trust carried over to the deed of trust recorded on December 9, 1988, because the first deed of trust was released contemporaneously with the recording of the second deed of trust.

■ Citizens relies on *DeWees v. Stoup,* 494 S.W.2d 372, 374 (Mo.App.1973), to support its argument. In *DeWees,* the court found a second "permanent" loan retained the priority of the first loan because the second loan was in essence substituted for the first. In so holding, the *DeWees* court relied on *Greenfield v. Petty,* 346 Mo. 1186, 145 S.W.2d 367 (Mo.1940), and on *Breit v. Bowland,* 127 S.W.2d 71 (Mo.App.1939), two other cases where the courts found the priority of a prior deed of trust carried over to a subsequently recorded deed of trust. In *Greenfield,* the Missouri Supreme Court stated, "the release of a mortgage is not conclusive as to its discharge, or as to its payment of indebtedness, secured by the mortgage." *Id.* 145 S.W.2d at 370. Indeed, the recording of a new mortgage contemporaneously with the release of an old mortgage *securing the same indebtedness* creates a presumption of an intent to preserve the priority of the first mortgage. *Breit,* 127 S.W.2d at 74[7]. The court in *Breit* further stated:

> So long as the same debt, or some part of it, subsists, the presumption ordinarily is that the new mortgage is intended as a renewal of the old, and a continuance of the same security. Nor does the including in the new mortgage of an additional indebtedness not covered by the first discharge the lien of the old mortgage, so far as the indebtedness secured thereby re-

mains unpaid, unless such be the purpose of the parties.

In finding the second loans retained priority, these cases relied on various factors including: (1) the loans were for the *same* amount of money, (2) the loans were made for the *same* purpose, (3) the loans were secured by the *same* land, and (4) the only change was in the form of the payments. *DeWees,* 494 S.W.2d at 374; *Greenfield,* 145 S.W.2d at 371; *Id.* at [6].

For the most part, the land acquisition loan and the second loan do not cover the same indebtedness. They were for different amounts, had different collateral, and were made for different purposes. However, a portion of each loan covered an indebtedness attributable to Lot 31. Lot 31 was acquired from the proceeds of the land acquisition loan and was included in the deed of trust covering this loan. This indebtedness remained unpaid at the time the second loan was made. In fact, proceeds from the second loan were used to pay off the portion of the land acquisition loan covering Lot 31. Therefore, the priority date of the land acquisition loan must carry over to the portion of the second loan which was used to purchase Lot 31 ($79,750). *See, Breit,* 127 S.W.2d at 74–75[7]. Nonetheless, we uphold the trial court's judgment finding the Allans' vendee's lien had priority because Citizens waived any priority it retained from the September 1987 deed of trust by making the second loan with knowledge the Allans had already contracted to buy Lot 31 and the house to be constructed on it.

■ In Points V and VI, Citizens alleges error with the trial court's finding, even if the priority of the September 1987 loan did carry over to the loan recorded in December 1988, Citizens waived priority by requiring Dunhill to pre-sell the homes in order to qualify for construction financing and by making the second loan to Dunhill with knowledge of the Allans' contract.

Appellants argue the court erroneously applied the waiver theory used in *Drilling Service Co. v. Baebler,* 484 S.W.2d 1 (Mo.1972); and *Dave Kolb Grading v. SCOF,* 837 S.W.2d 924 (Mo.App.1992). They argue the waiver theory used in these cases applies only to priority contests involving mechanics' liens. They allege the waiver theory was developed only as an extension of the "first spade rule" and the other statutory protections afforded mechanics' liens. *See,* §§ 429.050 and 429.060, RSMo 1986. However, in both *Baebler* and *Dave Kolb,* the finding that the mechanics' liens had priority over the first mortgage was based, not only on the law of mechanics' liens, but also on the equitable principles of waiver. 484 S.W.2d at 10; 837 S.W.2d at 935.

In *Baebler,* the court found the mechanic's lienholders were entitled to priority over the first mortgagee because he knew about the entire construction project and provided the money for the construction. 484 S.W.2d at 10[3]. In so holding, the *Baebler* court stated, "Even apart from the 'first spade rule,' the doctrine of waiver leads to the same conclusion." *Id.* at 10[4]. Further, the court in *Dave Kolb* found the lender waived its priority because the bank had notice of *potential* liens. 837 S.W.2d at 935[18]. The court found waiver based on evidence the bank funded the purchase of the ground with the intention that the subdivision be built and the bank's vice president admitted he would not have made the loans absent a plan to develop the ground. *Id.*

In this case, Citizens' vice president stated he made the loans in reliance on the construction project and expected a house to be built on Lot 31. Further, at the time Citizens made the second loan and partially released the first loan, it knew the Allans had contracted to buy Lot 31 and the new home that was to be constructed on it. In fact, the only reason the second loan was made was to finance the construction of the new home. Substantial evidence supports the trial court's finding Citizens waived any priority it retained from the partial release of the lot acquisition loan by making the second loan to Dunhill with knowledge of the Allans' contract. Points denied.

■ In Point VII, Appellants argue the trial court erred in finding the title Citizens acquired at the foreclosure sale was subject to the Allans' vendee's lien. As stated earlier, the Allans' vendee's lien was superior to

**646**

Citizens' lien. Further, the Allans properly perfected their lien against Lot 31 by filing a notice of Lis Pendens on February 17, 1989, four days before the foreclosure sale was held. According to § 527.260, RSMo 1986, the filing of a Notice of Lis Pendens serves as constructive notice to purchasers as of the time it is filed. Therefore, Citizens and all subsequent purchasers of Lot 31 took the lot subject to the Allans' superior lien. Point denied.

Judgment affirmed.

SIMON, P.J., and CRANDALL, J., concur.