REED vs. THE HEIRS OF AUSTIN.

1. The lien of a judgment will hold, against a prior unrecorded deed. Hill vs. Paul, 8 Mo. R.; affirmed.

3. The recitals in a sheriff's deed cannot be contradicted by parol evidence.

3. A sale under a voidable judgment, cannot be impeached in a collateral proceeding.

4. A sale under a satisfied judgment, is void only against the purchaser with notice.

5. Irregularities in a sheriff's sale can only be corrected by a direct application for that purpose, and cannot be taken advantage of in a collateral proceeding.

ERROR to Carroll Circuit Court.

ABIEL LEONARD, for Plaintiff in error.

For the reversal of this judgment, the plaintiff in error will insist upon the following

### POINTS AND AUTHORITIES.

I. An unregistered deed is valid against an execution purchaser, without notice at the time of his purchase, regardless of the question of notice in the judgment creditor.

1st. The object of registry laws is merely to give notice of the state of the title to those who are about to acquire a specific interest in the land, and therefore, though the words be general, and extend to all persons, they must be confined in their application, to persons taking a specific interest in the land from the *same* grantor.

Upon this principle, a mere trespasser, claiming no title to the land, cannot allege the non-registry of the plaintiff's deed, nor can a defendant in ejectment, claiming the land under a title derived from a different grantor, rely upon that matter to invalidate the opposing title.

2nd. Such being the object of these laws, and the persons to be protected by them, the notice which English equity declares to be equivalent to registry, and which is made so by the express terms of our statute, is a notice at the time of taking the specific interest in the land, which otherwise would be defeated by the unregistered deed.

3d. A judgment creditor acquires no specific interest in the land of his debtor. He has neither *jus in re*, nor *jus ad rem*, but a mere general lien. According to the principles of English equity, he acquires a lien upon the debtor's land, as the title then exists in the debtor's hands, and subject to all the equities then against it. When the land is sold under execution, the purchaser's title relates back to the commencement of the lien, so as to cut out all intermediate incumbrances, but not so as to cut off the equities that existed against the land at the time of the judgment, and of which the purchaser had notice at the time of his purchase.

4th. Under the British statutes, these principles were declared, and administered in the court of chancery. In that court it was declared, that although the statute bound the legal title, the notice bound the conscience of the party taking that title. Our statute declares the unregistered deed valid against the grantor, and those who have notice, and here, therefore these principles have become legal principles, and are to be administered at law. As in equity, an unregistered deed would prevail against an execution purchaser with notice, regardless of the question of notice to the judgment debtor, so now, under our statute,

such a deed ought to prevail at law, under the same circumstances. 4 Cruise's Dig. 112, 115, 491, 496, 499, 482, 483, 484, 485, and 486. Latouch vs. Dunnusany, 1 Sch. & Lef. 137 & 162. Le Neve vs. Le Neve, 3 Atk. Rep. 646. Forbes vs. Deneston, 4 Brown's Ca. Parl. 190. Jackson vs. Burgott, 10 John. Rep. 461. Brace vs. Duchess Marlborough, 2 P. Williams. 491. In the matter of Howe, 1 Paige's Rep. 130. Reested vs. Avery, 4 Paige's Rep. page 15. Conrad vs. Atlantic Ins. Co. 1 Peters' Rep. 443; 3 Mass. Rep. Supplement, 573; Rev. Stat. Mass. chap. 59, sec. 28; 4 Mass. Rep. 638. Davis vs. Blunt, 6 Mass. Rep. 488. Trull vs. Bigelow, 16 Mass. Rep. 417. Priest vs. Rice, 1 Pick. Rep. 164. Caffen vs. Ray, 1 Metcalf's Rep. 212. Curtis vs. Mundy, 3 Metcalf's Rep. 405.

Rhode Island—West vs. Rondall, 2 Mason's Rep. 181.

Connecticut—Welch vs. Gold, 2 Rootes' Rep. 287; Moore vs. Watson, 1 Roots' Rep. 387.

Maine—Mathews vs. Demeritt, 22 Maine Rep. 315.

New Hampshire—Colby vs. Kenneston, 4 N. H. Rep. 264

New York—Jackson vs. Burgott, 10 John. Rep. 461.

Pennsylvania—Lessee of Heister vs. Fortner, 2 Binney Rep. 40.

Kentucky—Helm vs. Logan, 4 Bibb's Rep. 78; Campbell vs. Mosley, 6 Littell's Rep. 358; Graham vs. Samuel, 1 Dana Rep. 166; Morton vs. Robards, 4 Dana Rep. 260; Hally vs. Oldham, 5 Mon. Rep. 234.

Virginia—1 Tucker's Com. 270, 271, and 272; Guerrant vs. Anderson, 4 Rand. Rep. 208.

South Carolina—Fort vs. Crawford, 1 McCord's Rep. 268; Reaborne vs. Teasdale, 2 Bay's Rep. 546; Teasdale vs. Atkinson, 2 Bay's Rep. 546.

II. It was competent for the defendant to show that the sheriff sold the two tracts of land separately, and that the tract first sold, yielded enough to satisfy the eight circuit court judgments, of the 3d of April, 1839, that were older than Caton's deed of the 24th April, 1839, and which deed is itself older than the seven justice's transcripts of the 22d of May, 1839; because,

1st. The sale of the first tract, (the n. w. 1-4 of s. 8,) satisfied the eight executions that had been levied upon the land embraced in the sheriff's deed, according to the recitation of the levy in that deed, and thereupon these executions ceased to confer any authority upon the sheriff to sell the other tract; and the subsequent sale of that tract was void, unless the sheriff had other authority to sell, and did in fact sell under such authority. Ex-parte Lawrence, 4 Cowen Rep. 417. Clarke

vs. Withers, 1 Salk. Rep. 322.    Hoyt vs. Hudson, 12 John. Rep. 207 Wood vs. Torrey, 6 Wend. Rep. 562.

2d. The other seven executions conferred no authority upon the sheriff to sell on account of the invalidity of the justice's judgments, upon which they were issued; and if they did confer such authority, it was never exercised, the fair construction of the deed being, that the sale was made under the eight executions which it expressly recites were levied upon the land, and not that it was made by virtue of executions never levied.

3rd. The eight circuit court judgments being older, and the seven justice's transcripts younger, than the defendant's deed from the judgment debtor, if the defendant is excluded from showing the facts offered by him in evidence, the consequence is, that the younger judgments are by the mere act of the officer, tacked to the elder judgments, and the lien of the deed thus squeezed out ; and in this manner the defendant is stripped of his property by the act of the officer, of which he had no notice, and against which he has had no opportunity of defending himself.

III. The deed of the 3d of April, 1839, was made in pursuance of the cancelled title bond of 1838, and ought to relate back to the date of the bond, so as to cut out the incumbrance of the intermediate judgment, and vest the legal title, as against the purchasers under that judgment, in the grantee from the date of the title bond.


STRINGFELLOW, for Defendants in error.

1st. The judgments rendered by the justice are valid, and the transcripts were properly admitted in evidence.   The sum for which judgment was rendered, being stated in figures, with the $, is sufficient. The $, whether it be regarded as an abbreviation, cypher, symbol, or a part of the English language, has a meaning as fixed, certain and definite as the word "dollar," or any other word in our language.   Its use has been adopted, and its meaning recognized, by not only the whole people of this country, but by the legislatures of this State, and by every court, from the lowest, to this the most exalted judicial tribunal in the State. · Statute 1835–6, title, Fees.   Morris & Lenox vs. Martin, 8 Mo. Rep. 253.   In this case, an account setting out the amount claimed in figures, with the $, was sustained.   See records of this court.

2nd. An insufficient notice will not avoid a judgment.   If the court have jurisdiction of the subject matter, and the defendant notice of the

proceedings, the judgment will not be void, however irregular, or erroneous the proceedings. Montgomery vs. Farley & Robinson, 5 Mo. Rep. 235; Griffin & Kenote vs. Samuel, 6 Mo. Rep. 50; Perryman *et al.* vs. State to use of Relfe, 8 Mo. Rep. 209; McNair *et al.* vs. Biddle *et al.*, 8 Mo. Rep. 264.

Judgments by confession, need only be in writting where there is no service of process. A confession of judgment, on service of process, cures all defects in the service. Davis vs. Wood, 7 Mo. Rep.

3rd. But admitting the judgments before the justice to be voidable, they cannot be impeached, nor can titles acquired under them be impaired in collateral proceeding; and much less, in such a proceeding, in which neither of the parties to the judgment are interested. McNair *et al* vs. Biddle *et al.* 8 Mo. Rep. 264.

4th. The records of the judgments of the Carroll Circuit Court, were properly admitted in evidence. Though for costs alone, without setting out any specific amount, they were valid. It is submitted, that in no court, when a cause is dismissed, will the judgment specify the amount of cost. See records of this court.

5th. The docket of circuit court judgments and decrees, was evidence of the time at which the transcripts were filed. Rev. Code, 1835-6.

6th. The paper offered in evidence by Reed, the defendant below, to show title out of Austin, was properly rejected. *First*, It did not purport to be a copy of the deed attempted to be set up. *Second*, The witnesses all proved that it was not a copy. *Third*, The witnesses all testified that the cancelled deed was a mere title bond; the copy offered was of a deed of bargain and sale. *Fourth*, The canceled deed was destroyed by the parties thereto, and a new deed made in its place. A deed thus cancelled, cannot be set up by a party thereto, and much less by one having no interest therein. Commonwealth vs. Dudley, 10 Mass. Rep. 403; Holbrook vs. Tirrell, 9 Pickering Rep. 103; Farrar vs. Farrar, 4 New Hamp. Rep. 194; 13 Mass. 499.

7th. Evidence of the destruction, and contents of the deed to James Reed was inadmissible. *First*, For the reasons last above given. *Second*, Because the evidence proved it to have been a mere title bond, or a bond to make a deed; and this gave but a mere equitable title, which could not be set up in ejectment. 1 John. Rep. 114; 2 John R. 221, 321; 8 John. Rep. 487.

8th. The deed to the Reedsburg Company was not admissible. It could not be made to revert to, and hold under the title bond to James Reed; and being made after the rendition of the judgments on which the land was sold, was no bar to plaintiff's title.

9th. Admitting that Caton had conveyed the land to James Reed, by deed of date prior to the rendition of the judgments, it was never recorded, and was no bar to plaintiff's title under the judgments. Waldo vs. Russell, 5 Mo. Rep. 393 ; 1 Met. 212 ; Jones vs. Luck, 7 Mo. Rep., 4 Mo. Rep. 386, 403 ; Hill vs. Paul, 8 Mo. Rep. 479 ; 4 Bibb, 78 ; 1 Dana Ky. Rep, 166, 359 ; 7 Serg. & Rawle, 286 ; 1 B. & Der. Eq. Ca., 470. No notice of either deed was alleged, prior to the judgments.

10th. A sale by the sheriff of more land than was sufficient, is not void, but the title of the purchaser is good. The statute is merely directory. Evans vs. Wilder, 5 Mo. Rep. 323 ; Rector vs. Hart, 8 Mo. Rep. 460.

11th. Objections to a sheriff's sale, can only be made by a party interested, and not by him, in a collateral proceeding.

12th. A sheriff's deed cannot be contradicted by parol evidence. 7 Wend. Rep.; 20 John. Rep.

13th. A party not interested cannot, in a collateral proceeding, contradict a sheriff's deed, and have a sale made by him set aside.

Scott, J., delivered the opinion of the court.

Austin brought an action of ejectment against Reed, to obtain possession of lands in the declaration mentioned, and recovered judgment.

Austin derived title to the premises in controversy, under judgment of the circuit court, dated 3d of April, 1839, and justices' judgments docketed 22d May, 1839. Executions issued on these judgments, by virtue of which the land was sold on the 5th August, 1839, for which a deed was afterwards executed by the sheriff to the plaintiff.

David Reed set up a title in himself and others as the Reedsburg Company, which consisted of a deed dated 24th of April, 1839, but not recorded until the 16th September following; and offered to prove that the purchaser of the land at the sheriff's sale had notice, at the time he purchased, of the unrecorded deed to the Reedsburg Company; to which evidence objections being made, the court excluded it from the consideration of the jury.

The defendant also offered to prove that the lands in the sheriff's deed mentioned were sold separately; and that the first tract sold brought a sum sufficient to satisfy the eight executions issued from the circuit court, and which it appears from the recitals in the sheriff's deed were

alone levied on the lands, and consequently that the sale of the other tract to satisfy the other executions which had not been levied, was without authority and void.

The point involved in this cause, whether a judgment creditor is not preferred to a grantee, under a prior unregistered conveyance, has been under consideration in this court in cases heretofore determined. It has been again argued, and we are called upon to say whether the views heretofore expressed shall be maintained or abandoned.

In the consideration of questions involving the construction of statutes in relation to the same matter, when there has obviously been a departure from the phraseology of an old law in the enactment of a new one, we are compelled to believe that it was not done without reason. The first statute to which our attention has been called as throwing light upon this subject, is that of the 27th Hen. 8th, which declared that no estate should pass by bargain and sale, unless enrolled in six months. It was held under this statute, that the deed is valid except as to subsequent purchasers without notice. The reason of this decision is plain. It was the object of the law to remedy the mischief growing out of the secret conveyances authorized by the Statute of Uses, which being unknown to the common law, produced inconveniences to those who afterwards purchased the estate, without knowledge of such prior deeds. But if the subsequent purchaser had notice of the previous conveyance, the reason for passing the statute did not apply. It would require great ingenuity to give to these cases a shape which could throw light upon that now under consideration. They decide nothing as to creditors, and they depend upon the peculiar circumstances which produced the law upon which they are founded.

We think we are well warranted in saying that the idea of registering deeds was borrowed from the English statute, 2d and 3d of Anne, cap. 4, which expressly made in the place therein mentioned, all unregistered deeds fraudulent and void against subsequent purchasers and mortgagees for a valuable consideration. The statute of New York, in relation to the registry of deeds, has adopted the phraseology of the English law, and makes unregistered deeds void against subsequent purchasers and mortgagees in good faith and for a valuable consideration.

The interpretation put upon the English statute is well settled, and a mortgage not registered has preference over a subsequent docketed judgment. Here then is a statute which has been in force nearly a century and a half; it has been judicially liquidated; its construction is fixed and settled. Why should the legislature of this State, abandon-

ing in this instance the caution and prudence manifested on so many other occasions, in refusing to depart from the language of the English statutes, when incorporating them into our code, adopt a new mode of expression in relation to the registry of deeds, if it were intended that the precise interpretation should be put upon it, and it should have no other scope or aim than the English statute? We cannot believe that the legislature adopted so unusual a course without design. That a statute, whose language and construction was as familiar as household words, has been dropped, and other language adopted, when the only purpose was to obtain the end sought by the old statute, is an assumption so much at war with our experience on this subject, that we are compelled to disclaim it.

Our statute avoids all unregistered conveyances, except between the parties thereto and such as have actual notice thereof. No doubt is entertained that an unregistered deed will prevail over a subsequent purchaser or mortgagee with notice. But the question is, whether it goes farther and affects a creditor without notice. A similar statute prevails in Massachusetts. In that State suits are commenced by an original writ, and an attachment against the estate of the debtor which is held as security for the debt. Under that statute it is held that an attaching creditor, without notice at the time of his attachment, will be preferred to a grantee under an unregistered conveyance. Our mode of procedure in bringing suits, in the end attains the same results as that produced in Massachusetts, but in *inverso ordine*. There the lien commences with the service of the attachment; here it commences with the determination of a suit. A creditor is not passive in commencing his suit; he looks to the lien of his judgment as a security, and con ; fessions of judgment are taken with an eye to the security of the lien conferred by the law on judgments. There is a difference between the lien of a judgment under our laws, and that created by the 13th Ed. 1st. That statute does not in direct terms create the lien. But courts have so construed the statute which gave the *elegit*, as to infer a lien from the power to take the lands in execution. The lien grows out of the right to issue the *elegit*, and is dependent upon it. A judgment with a stay of execution creates no lien on land, until the plaintiff has a right to issue execution thereon; Scriba et al. vs. Deanes et al., 1 Brockenbrough. Our statute in express terms makes the judgment a lien, and continues in force for three years, and permits its indefinite extension, by *scire facias*, from time to time. The sale of land under a junior judgment or decree, passes the title of the defendant, subject to the lien of all prior judgments and decrees then in force. Liens cannot be said

to come involuntarily when suits are brought to obtain them. Nothing is more usual than to obtain judgments in justices' courts, and file transcripts in the circuit court, with a view to obtain the security of the lien of a judgment; and creditors do not imagine that a right thus secured could be affected by notice of an unregistered deed at the time of the sale of the lands, subjected to these liens. It is begging the question to say that a judgment is only a lien on lands possessed by the debtor at the time of its rendition, and cannot be made to extend to lands that have been conveyed. Whether they have been conveyed as regards the judgment creditor, is the very matter in controversy. Chancellor Kent, speaking of the rule which prevails in Pennsylvania, in which a docketed judgment is preferred to an unregistered conveyance, commends it for its simplicity and certainty in making every encumbrance whether it be a registered deed or a docketed judgment, in cases free from fraud, depend for satisfaction according to the priority of the lien upon the record, which is open for public inspection. And even if it should be, as has been said, that such is not the law of Pennsylvania, yet we may claim in support of the doctrine, the commendation of that jurist, to whom the profession is so much indebted, and whose industry has explored, and whose learning has adorned so many branches of our law. No decision of this court has gone farther than the principles above expressed; nor is it necessary that we should go beyond it in determining this case. To some extent the impression prevails that such is the law. The case of Jones vs. Luck, 7 Mo. Rep., which in its circumstances is so much like the case of Cushing vs. Hurd, 4 Pick., a case in Massachusetts, whose statute we have seen, is similar to ours, is an evidence of this. It is of no great importance how this question is settled, but it is of some concern that the law on the subject should be fixed and settled. No good can result from changing the interpretation of our statute. Indeed we may pause and reflect how far under the circumstances we would be warranted in making it. As far back as the year 1835, this court determined that a title under a junior judgment would prevail over a prior unregistered deed. The same principle was involved in the case of Jones vs. Luck, and yet the question was not made in the court below. And afterwards came the case of Hill vs. Paul, 8 Mo. Rep., in which the very point involved was determined. In this state of the question, our statutes underwent a revision : the construction put upon the law is reported to the general assembly, and they adhere to the law as it had been before written. They saw no departure from policy or principle in the course of the decisions of the court; or at least none which provoked their interference. Indeed

46

some of the soundest jurists regret the construction that has been put upon the registry act by the English and American courts, and openly avow their preference for the doctrine, that the priority of every instrument affecting real estate shall be determined by the date of its record. Cruise says the utility of the register acts is proved to a demonstration by two facts, namely: that lands in register counties bear a higher price, and money is lent on the security of those lands at a lower rate of interest, than on estates situate in counties where there is no register; and he continues, it would be a great amendment of the law, if it were enacted by the legislature, that no averment should be admitted either at law or in equity, that a person claiming under a deed that was registered, had notice of a prior unregistered deed. "We might," he says, "in this case borrow some wisdom from ancient France, where several points respecting substitutions being unsettled, and the laws on this head being different, in different parts of that kingdom, they were all reduced into one by the ordinance of 1747, which was framed by the Chancellor D'Aguesseau, after taking the sentiments of every parliament in the kingdom, upon forty-five different questions proposed to them upon the subject. The 39th question is whether a creditor or purchaser, having notice of the substitution before his contract, a purchaser is to be admitted to plead the want of registration." All the parliaments, except that of Flanders, agreed that he was. That to admit the contrary doctrine would make it always open to argument, whether he had or had not notice of the substitution. That this would lead to endless uncertainty, confusion and perjury; and that it was much better that the rights of the subject should depend upon certain and fixed principles of law, than upon rules and constructions of equity, which must be arbitrary and consequently uncertain. The ordinance was framed accordingly.

Our statute relative to the registry of deeds, fixes no time within which they must be recorded. They must then be put upon the record in a reasonable time; Cushing vs. Heard. 4 Pick. 257. Prudence would dictate this. Urgent considerations alone should influence us to put a construction upon our registry law, which would enable a purchaser to hold a deed for land in his pocket, and suffer his grantor to contract debts on the faith of that land to which he has no title. Prudent men examine the records, to ascertain if there are encumbrances on the estates of their debtors, and if they find none they imagine themselves secure, and will extend the credit, and refrain from steps to make hemselves safe.

As to the question arising on the evidence to show that the property

was sold in parcels, and that one parcel sold for a sum sufficient to satisfy the eight executions, which alone were levied on the lands, it may be remarked, that it has been made a question whether a sale under a satisfied judgment, is void or only voidable. But it seems well settled, that it can only be void against him who purchases with notice of the fact and in bad faith; Jackson vs. Anderson, 4 Wendall, 474; Jackson vs. Cadwell, 1 Cowen, 622. The principle of these cases would restrain the court from interfering with the judgment, independently of the doctrine of the cases of Jackson vs. Roberts, 7 Wendall, 83; Jackson vs. Vanderbeyden, 17 John. Rep. 167; Jackson vs. Sternberg, 20 John. Rep. 49, which is, that evidence is inadmissible to contradict the recitals in a sheriffs deed in a collateral proceeding; but that irregularities in conducting a sale, must be corrected by direct application to the court for that purpose.

Judge NAPTON concurring, the judgment will be affirmed.

McBRIDE, Judge, dissenting.