## NESBIT V. NEILL, *Appellant.*

1. **Execution Sale in Violation of Compromise Agreement: EJECTMENT.** It is a good equitable defense to an action of ejectment for land claimed by the plaintiff by virtue of a purchase at execution sale, that the sale was made in violation of a compromise agreement of which the plaintiff was aware, and which he was charged with the duty of executing.

2. **Case Adjudged.** A judgment having been obtained against an administrator and his securities, an agreement in writing between the plaintiffs and the securities was prepared, by which the latter were to pay part of the judgment, but, no more, unless the remainder could not be made out of the estate of the principal. One of securities, (the defendant in the present action,) who perhaps had

not signed the agreement, had, however, accepted it, and had paid his proportionate share of the amount agreed upon, and the assets of the principal, then in bankruptcy, were more than sufficient to pay the remainder of the judgment. The plaintiff in the present action not only had notice of these facts, but was the person selected by all the parties to the judgment to see that the terms of the compromise were respected, and, as assignee of the principal, was in possession of his assets. He procured the issuance of an execution upon the judgment, and at the sale thereunder purchased the land of the defendant. In an action of ejectment by him for this land, *Held*, that these facts constituted an equitable defense to the action; that it was immaterial whether the defendant had signed the agreement or not; having paid his share of liability under it, he was entitled to its benefits; that the vitality of the judgment was suspended by the compromise, and an execution issued while it was suspended, had no more effect than one issued on a satisfied judgment.

*Appeal from Callaway Circuit Court.*—Hon. G. H. BURCK-HARTT, Judge.

*John A. Hockaday* for appellant.

An execution sale under a judgment that has been paid off carries no title to a purchaser with notice. Where land is sold under an execution, which has been satisfied by the sale of other property, the deed to such land is inoperative and void. *Durette v. Briggs,* 47 Mo. 356; *Weston v. Clark,* 37 Mo. 568; *Reed v. Austin,* 9 Mo. 713. Whilst the judgment in the present case had not been actually paid off, yet funds were in the hands of respondent, the owner of the judgment, sufficient to satisfy it, and for that purpose, which was equivalent to payment. Whether appellant signed the compromise agreement or not, it enured to his benefit, and respondent had no right under the agreement to have Neill's land sold until Hook's estate proved insufficient for the payment of the remainder of the judgment.

*J. W. Boulware* for respondent.

The judgment, execution and deed to respondent being regular and valid, and the judgment being unsatisfied and in full force, respondent's title was complete. Nesbit's relation to the judgment did not affect his rights. *Butterfield v. Walsh*, 21 Iowa 99; *Evans v. McGlasson*, 18 Iowa 150.

NAPTON, J.—There is no doubt of the regularity and validity of the plaintiff's title at law, to the land in controversy. The question is whether a court of equity will allow a title, acquired under the circumstances proved in this case, to be available to the plaintiff in ejectment. There is some contrariety in the testimony in regard to the question of fact, whether the defendant, Neill, signed the compromise agreement between the securities of Hook and the plaintiffs in the judgment against them for $44,000. We think the fact entirely immaterial. It is quite certain that he did not sign the paper ultimately accepted by Mr. Glover, the attorney in fact, as well as the attorney at law of the plaintiffs in the Payne judgment, though it is quite probable, indeed I might say certain, that he did sign a paper deposited in the Fulton Bank, purporting to be such agreement, but which, being unsatisfactory, was returned to Mr. Nesbit, to whom this judgment was proposed to be transferred for certain purposes specified in the compromise. Whether the defendant signed the compromise or not, it is certain that as one of the securities and defendants in said judgment, he was assessed his proportionate share and paid it. It was Mr. Nesbit's business to collect the $30,000 from the securities, and he was also selected to regulate the amount each security should pay by his pecuniary ability to stand the loss, and the sum he assessed against the defendant, Neill, was paid by Neill, and the whole $30,000 was collected and remitted to Mr. Glover, in St. Louis. It was of no importance whether he signed the compromise or not—he accepted it, ratified it, paid his share of liability under it and would therefore seem, upon

ordinary equitable principles, to have been as much enti-
tled to the benefits of it as though he had signed it.   The
substance of this compromise was that the securities of
Hook were to pay $30,000 of the $44,000, due on the
Payne judgment, and the judgment was to be transferred
to Nesbit for the purpose of securing an additional $10,000
and costs; but, upon the distinct understanding and agree-
ment that if this $10,000 could be made out of the estate
of Hook, then in bankruptcy, the securities were to be no
further molested.   Mr. Nesbit was the assignee in bank-
ruptcy of Hook's estate.   He also had control of this Payne
judgment.   He is the plaintiff in this case, and, as a wit-
ness, states that the assets of Hook in his hands exceed
$10,000; that they are sufficient to pay this sum; that, in
truth, there will be a surplus after paying what he pro-
poses to pay over to the securities.   He admits that there
was no necessity for levying the execution on the Payne
judgment against defendant's land, with any view to aid
or in any way benefit the plaintiffs in that judgment, but
says that Mr. Glover, the agent of these plaintiffs, ordered
the execution, and he himself did not directly have it
issued.   Mr. Glover, no doubt, was aware that Neill's name
was not on the compromise agreement, for he had the
original in his office, but it is possible he was not told by
Mr. Nesbit that Neill had paid up his share of the $30,000.
Be this as it may, there was no authority to issue the exe-
cution until Hook's estate proved insufficient to pay the
$10,000.   Neither the plaintiffs, nor their attorney in fact,
nor the plaintiff in this ejectment suit, had a right to order
the execution under the compromise agreement.   The
truth is, as the evidence clearly discloses, that the plaintiff,
Nesbit, had gone security for Neill when he borrowed some
$450 of the sum which he paid under the compromise.
Nesbit was anxious to get Neill's land to secure this debt,
and, as the debt to the Paynes had been contracted long
before the passage of our homestead law, and their judg-
ment was not subject to its provisions, he preferred availing

himself of that judgment, of which he had control under the compromise, to risking an action of his own, which might be defeated by the defendant, if he thought proper to avail himself of this homestead law. It would be harsh to characterize such conduct as fraudulent—it could at most be merely technically so—for, as the indebtedness of Neill to him grew out of his aid in enabling him to pay up under the compromise, it was natural for him to conclude that he might properly make use of this judgment to secure himself. But Neill occupied the same position in regard to the judgment that the other securities did, although he had not signed the paper, and therefore the plaintiff, as the party entrusted with a control over the judgment, had no more authority to have an execution issued against him, than he would against any other security, against whom he had no individual claim. A sale under an execution on a satisfied judgment, carries no title to a purchaser who has notice. *Reed v. Austin*, 9 Mo. 713 ; *Weston v. Clark*, 37 Mo. 568 ; *Durette v. Briggs*, 47 Mo. 356. The Payne judgment was not satisfied, but its vitality was suspended by the compromise. An execution, issued during such suspension, had no more effect than one issued on a satisfied judgment. The purchaser here was not only acquainted with the facts, but he procured the issuance of the execution, and was the very person selected by all parties, the securities, the plaintiffs in the judgment and the creditors of Hook's estate in bankruptcy, to see that the terms of the compromise were respected. Under these circumstances we are of opinion that he acquired no title against the defendant on the execution. The judgment of the circuit court is reversed, and a judgment for defendant will be ordered here, in conformity to this opinion. The other judges concur, except SHERWOOD, C. J., who expresses no opinion.

REVERSED.