**GOLDEN DELTA ENTERPRISES, L.L.C., Respondent,**

v.

**US BANK f/k/a Mercantile Bank of St. Louis Na, et al., Appellant.**

No. ED 87364.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 23, 2007.

Jennifer M. West, St. Louis, MO, for appellant.

Phillip K. Gebhardt, Desoto, MO, for respondent.

NANNETTE A. BAKER, Judge.

### Introduction

US Bank appeals a trial court judgment in the Circuit Court of Jefferson County finding that it is precluded from conducting foreclosure proceedings against Golden Delta Enterprises, L.L.C. ("Golden Delta") in connection with a future advance deed of trust granted by the previous owners of certain real estate Golden Delta purchased at a foreclosure sale. We reverse and remand.

### Factual and Procedural Background

Robert and Julia Ray ("the Rays") purchased a parcel of real property in Arnold, Missouri in September, 1978. The Rays financed the purchase with a $31,000 loan from Community Federal Savings and Loan Association. The Rays executed a Purchase Money Deed of Trust to secure the loan ("Purchase Money Deed of Trust") and recorded it.

In October 1989, the Rays took out a home equity line of credit from U.S. Bank ("Home Equity Credit Line Agreement").[1] This loan was secured by a "Home Equity Line Future Advance Deed of Trust" ("Home Equity Deed of Trust"). The Home Equity Deed of Trust secured all future advances made within ten years of the date of execution, not to exceed a maximum of $21,000. It stated "[n]either the existence nor priority of this [deed of trust] shall be adversely affected if at any time prior to the expiration of ten (10) years ... there is no indebtedness or other obligations then secured by this deed of trust or the indebtedness and other obligations secured hereby are reduced to nothing." The Home Equity Deed of Trust states that it is "governed by all of the provisions of Section 443.055 of the Revised Statutes of Missouri."[2]

The Home Equity Credit Line Agreement and Deed of Trust were properly recorded. The Home Equity Credit Line Agreement states "No further advances will be made after October 24, 1990, unless the line of credit hereunder is renegotiated or otherwise extended." The Home Equity Credit Line Agreement stated that it would be secured by the Home Equity Deed of Trust, even if the account was reduced to zero. It also stated "Notwith-

---

1. At the time the Rays took out the loan, U.S. Bank was known as Mercantile Bank of St. Louis. To avoid confusion, we will make all references to U.S. Bank.

2. All statutory references are to Mo.Rev.Stat. 1986 unless otherwise noted.

standing any other agreement with the Bank to the contrary, this Agreement shall be secured only by a subordinate Future Advance Deed of Trust on the residential real property described in said Deed of Trust dated October 24, 1989."

In August, 1997, the Rays took out a loan for $88,000 from a refinancing lender [3] and executed a deed of trust ("Refinancing Deed of Trust") to secure the loan. They also paid the Home Equity Credit Line down to zero. The Refinancing Deed of Trust was recorded August 19, 1997. The Purchase Money Deed of Trust was released of record on September 3, 1997.

The Home Equity Deed of Trust was not released of record. On June 15, 1998 the Rays started making advances on the Home Equity Credit Line. The Rays continued making advances until October 25, 2002, reaching a principal balance of approximately $18,000.

In May 2002, the Rays executed a loan modification agreement with the refinancing lender for the refinancing loan. According to the agreement, the Rays had not paid "taxes, insurance premiums and other expenses" associated with the refinancing loan. The expenses were paid by the lender and the costs were added to the principal of the refinancing loan, increasing the balance to approximately $83,700. Thereafter, the Rays defaulted on the loan and the refinancing lender initiated foreclosure proceedings.[4]

The Rays continued to make payments on the Home Equity Credit Line until January 26, 2004.[5] The Home Equity Credit Line account had a balance of approximately $18,600 when the Rays defaulted on the loan. After the default, U.S. Bank initiated foreclosure proceedings.[6] On May 20, 2004, Golden Delta purchased the property at a foreclosure sale on the refinancing loan for $91,000.

US Bank scheduled a foreclosure sale on the Home Equity Credit Line Agreement and Deed of Trust for July 2004. Golden Delta filed a Petition for Injunction and Motion for Temporary Restraining Order to stop the sale. Golden Delta sought a declaratory judgment requesting a finding that the foreclosure of the Refinancing Deed of Trust extinguished the Home Equity Deed of Trust. The court granted a temporary restraining order and preliminary injunction to prevent foreclosure.

The court held a bench trial and Golden Delta and U.S. Bank both offered testimony and exhibits. The trial court issued findings of fact, conclusions of law and a judgment in favor of Golden Delta.

The court determined that the Refinancing Deed of Trust had priority over the Home Equity Deed of Trust, and that the Home Equity Deed of Trust was extinguished by the foreclosure of the Refinancing Deed of Trust. The court found that when the Home Equity Deed of Trust was paid down to zero, "[t]here was then no

---

**3.** The Rays received the loan from American Equity Mortgage, Inc. In March, 1998, American Equity assigned the loan to Mellon Mortgage Company, which later changed its name to Chase Mortgage Company. The successor trustee South and Associates actually conducted the foreclosure sale. For less confusion, all of these entities will be referred to as "refinance lender."

**4.** The record does not contain information about the specific date the proceedings were initiated.

**5.** Golden Delta's brief states that the Rays made payments on the Home Equity Credit Line until October 2004, however the payment history statement in the record indicates that the last payment was in January 2004.

**6.** The record does not contain information about the date the proceedings were initiated.

debt to have priority over the [refinancing] deed of trust." The court also stated that the advances were "contrary to the terms of the recorded Home Equity Credit Line Agreement." The court permanently enjoined U.S. Bank from proceeding with foreclosure on the Home Equity Deed of Trust. US Bank appealed.

### Standard of Review

We affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### Discussion

### I. Rule 84.04

█ Golden Delta argues that U.S. Bank's brief fails to comply with Rule 84.04 and that we should dismiss the appeal. More specifically, Golden Delta argues that U.S. Bank's brief contains three nearly identical points containing three sub-points each, in violation of the Rule 84.04 requirement that each separate claim of error must be set out in a separate point.

In its first point, U.S. Bank argues the trial court erred in finding that the Refinancing Deed of Trust had priority over the Home Equity Deed of Trust because (1) U.S. Bank's advances were not contrary to the Home Equity Credit Line Agreement; (2) the court failed to consider whether the Home Equity Deed of Trust complied with the future advance statute; and (3) Golden Delta is not entitled to equity as a matter of law. In its second point, U.S. Bank argues that the court erred in finding that the foreclosure of the Refinancing Deed of Trust extinguished the Home Equity Deed of Trust, for the same three reasons as in Point I. In its final point, U.S. Bank argues that the trial court erred in enjoining U.S. Bank from foreclosing on the Home Equity Deed of Trust, for the same three reasons as in Point I.

█ The purpose of Rule 84.04 is to notify the opposing party of the precise matters that must be contended with and to inform the court of the issues presented for review. *Glasgow Enterprises v. Bowers*, 196 S.W.3d 625, 629 (Mo.App. E.D. 2006). (Internal quotation omitted). Although U.S. Bank's organizational choices are not ideal, the brief is adequate to inform Golden Delta and this court of the issues presented for appeal. While we do not condone violations of Rule 84.04, we will exercise our discretion to review in more detail the claims made in one sub-point, which we find to be dispositive.

### II. Future Advances Statute Section 443.055

█ US Bank argues that the trial court erred in finding that the Home Equity Deed of Trust lost priority when the balance of the Home Equity Credit Line was paid down to zero. In its order, the trial court found that the Home Equity Deed of Trust could not have priority over the Refinancing Deed of Trust because "[w]hen the [Refinancing] Deed of Trust was executed both the [Purchase Money] Deed of Trust and the [Home Equity] Deed of Trust were paid in full. There was then no debt to have priority over the [Refinancing] Deed of Trust."

This finding is contrary to Missouri law. Section 443.055 specifically allows a deed of trust to secure future advances or future obligations of a borrower if the lender has complied with the statute. The statute specifies that:

[n]either the existence nor priority of an instrument otherwise complying with

the provisions of this section shall be adversely affected if at any time prior to the expiration of ten years after the date of such instrument there are no obligations then secured by the instrument or the obligations secured thereby are reduced to nothing.

Section 443.055.2.

US Bank argues that it fully complied with the requirements of Section 443.055 effective at the time of the loan and thus it did not lose priority when the balance was reduced to zero. First, the statute requires that the instrument must clearly state on its face that it secures future advances, and second, it must state the total amount of the obligations which may be secured. Section 443.055.2. Here, the title of the instrument is "Home Equity Credit Line Future Advance Deed of Trust" and the first paragraph of the instrument states "This deed of trust shall secure any and all present and future indebtedness, obligations, and advances in the maximum principal amount of $21,000.00. This instrument shall be governed by all of the provisions of Section 443.055." Next, the statute prohibits the total principal amount of the obligation from exceeding the face amount stated. Here, the payment history shows that the principal amount of the loan did not exceed $21,000. Finally, the 1986 version of Section 443.055 (now repealed) required that all advances be made within ten years of the execution of the instrument. Here, the instrument was executed in October, 1989 and the final advance was made May 26, 1999. Thus, the Home Equity Deed of Trust fully complied with the requirements of 443.055.

Because the instrument fully complied with the statute in effect at the time of its execution, the trial court erred in finding that the Home Equity Deed of Trust lost priority when the balance was reduced to zero. This point is granted.

■ The trial court did not make any determination regarding whether the priority of the Purchase Money Deed of Trust was carried over to the Refinancing Deed of Trust. Upon remand, the court's first task should be to determine the priority of the loans at the time the Refinancing Deed of Trust was foreclosed upon. In Missouri, the earliest recorded, or "senior," deed of trust generally has priority over later recorded, or "junior," deeds of trusts. See Section 442.380; 18 Mo. Prac. Real Estate Law–Transactions Section 13:6 (2006 ed.). The proper foreclosure of a senior deed of trust extinguishes deeds of trust and other interests junior to it. See Sipes v. Kansas City Title Co., 372 S.W.2d 478, 479 (Mo.App.K.C.1963). This is because a purchaser at the foreclosure sale acquires title as it existed on the date the foreclosed deed of trust was recorded. S.S. Kresge Co. v. Shankman, 240 Mo.App. 639, 212 S.W.2d 794, 801 (K.C.1948). See also, 38 Mo. Prac. Missouri Foreclosure Manual Section 4:16 (2006 ed.).

The Rays purchased the real estate in 1978 with a loan for $31,000 secured by the properly recorded Purchase Money Deed of Trust. In 1989, the Rays obtained the Home Equity Credit Line, secured by the Home Equity Deed of Trust, recorded November 16, 1989. At this point, the Purchase Money Deed of Trust had priority over the Home Equity Deed of Trust.

In 1997, the Rays "refinanced," obtaining an $88,000 loan, secured by the Refinancing Deed of Trust, recorded on August 19, 1997. On September 3, 1997, the Purchase Money Deed of Trust was released of record. Generally, when a higher priority deed of trust is released, the next in priority moves up in priority. At the core of U.S. Bank's argument is their assumption that the Home Equity Deed of

Trust moved into first priority when the Purchase Money Deed of Trust was released of record. However, this assumption is not so easily accepted because special rules may apply when a senior deed of trust is released of record and replaced by another.

The Restatement of Property concisely states the rule of law applied in Missouri case law: "If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except ... to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate." RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES Section 7.3 (1997).

Indeed, in *Breit v. Bowland,* senior priority carried from the first deed of trust securing a loan with seven percent interest to a latter deed of trust securing a loan of a nearly equal amount at six percent interest. 127 S.W.2d 71, 74 (Mo.App.K.C.1939). The court noted that the release of the first and recording of the latter were "approximately contemporaneous acts" and the deeds of trust secured the same debt, and therefore the court presumed that the parties intended a continuance of the same security. *Id.* The court held that the new loan held priority over an intervening lien. *Id.*

Similarly, the courts in *DeWees v. Stoup* and *Construction Equipment Mgmt. Inc. v. Dunhill Dev. Corp.* held that "permanent" loans replacing construction loans retained senior priority over intervening liens. *DeWees,* 494 S.W.2d 372 (Mo.App. K.C.1973); *Dunhill,* 892 S.W.2d 639 (Mo. App. E.D.1994). The *Dunhill* court noted, "the recording of a new mortgage contemporaneously with the release of an old mortgage *securing the same indebtedness*

creates a presumption of intent to preserve the priority of the first mortgage." 892 S.W.2d 639, 644. (emphasis in original.)

■ Most recently, in *Burney v. McLaughlin,* the Southern District examined a similar issue in cases where loan terms were modified and noted:

It is well established that while a senior mortgagee can enter into an agreement with the mortgagor modifying the terms of the underlying note or mortgage without first having to notify any junior lienors or to obtain their consent, if the modification is such that it prejudices the rights of the junior lienors or impairs their security, their consent is required.

*Burney v. McLaughlin,* 63 S.W.3d 223, 230 (Mo.App. S.D.2001). In fact, failure to obtain consent for a material modification may result in the modification being ineffective as to the junior lienors, and the senior lienor relinquishing priority to the extent of the modification. *Id.* In some cases, where the modification has "substantially impaired" or "materially prejudiced" the junior lienor's security interest, courts have elevated the junior liens to senior priority. *Id.* at 231. "Obviously an increase in the principal amount will prejudice the holders of junior interests." *Id.* at 232. "Accordingly, where the modification entails an increase in the senior mortgage interest rate or an increase in its principal amount, the junior lienor will gain priority over the earlier mortgage to the extent of the modification." *Id.*

Here, the record reflects that the Purchase Money Loan and Deed of Trust was released of record and replaced with the Refinancing Deed of Trust more or less contemporaneously. The Purchase Money Deed of Trust had an undetermined outstanding balance at the time of release. The replacement loan for $88,000 was

nearly triple the amount of the loan secured by the Purchase Money Deed of Trust. However, there is no information in the record before us regarding the outstanding balance of the Purchase Money Loan, whether U.S. Bank knew of or consented to the refinancing loan, whether proceeds from the refinancing loan were used to pay down the Home Equity Credit Line, and whether U.S. Bank was made party to the foreclosure sale or knew of the foreclosure. Without these facts, proper analysis of this case is impossible.

### Conclusion

Because we have insufficient facts to determine the priority of the loans at the time the refinancing loan was foreclosed, we remand to the trial court with instructions to determine the priority of the loans. As this issue is dispositive, we do not reach U.S. Bank's other arguments.

CLIFFORD H. AHRENS, P.J., and MARY K. HOFF, J., concur.

Scott Thompson, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Jefferson City, MO, for respondent.

Before ROY L. RICHTER, P.J., KATHIANNE KNAUP CRANE, J., and SHERRI B. SULLIVAN, J.