# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2550

_____

United States of America

*Plaintiff - Appellee*

v.

Josh P. Tolin; Kimberly L. Tolin; Ocwen Loan Servicing, LLC; Enterprise Bank and Trust

*Defendant*s

Missouri Department of Revenue

*Defendant - Appellee*

Citibank South Dakota N.A.; Village of Winding Trails; Winding Trails Subdivision Homeowners' Association

*Defendant*s

v.

U.S. Bank National Association as Trustee, under Pooling and Servicing Agreement dated as of September 1, 2006 MASTR Asset Backed Securities Trust 2006-NC2 Mortgage Pass Through Certificates Series 200

*Intervenor Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

Submitted: January 13, 2016
Filed: July 5, 2016

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

GRUENDER, Circuit Judge.

The United States of America ("Government") brought suit to determine whether its 2004 tax lien on a foreclosed property had priority over several other competing interests in the property. These included an interest held by U.S. Bank National Association ("U.S. Bank") via a 2006 deed of trust. The district court[1] granted summary judgment in favor of the Government, and U.S. Bank appeals. We affirm.

I.

Josh and Kimberly Tolin purchased a parcel of real property in Ballwin, Missouri in March 2004. The Tolins financed the purchase with a $277,000 loan from New Century Mortgage Corporation ("New Century"). They then executed a deed of trust to secure the loan, recording the deed of trust on March 29, 2004.

Two years later, the Tolins began preparations to apply for a new loan. On March 24, 2006, they completed a uniform residential loan application, which indicated a loan request in the amount of $366,350 for a refinance. On this application, the Tolins described the purpose of the refinance as "cash-out/debt

---

[1] The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

-2-

consolidation." The application did not disclose any unpaid federal tax liabilities. That same day, the Tolins' loan closed, and a deed of trust to secure the loan was executed but not recorded. The loan was disbursed five days later. There is no evidence in the record that New Century or the closing agent performed a title search on the Ballwin property before closing on the new loan. Of the total funds disbursed, $274,410 was used to pay New Century for the remainder of the 2004 loan for the Ballwin property purchase, $83,005 went toward settling various other debts, and $8,934 went to the Tolins. New Century executed a deed of release for the 2004 deed of trust on April 10 and recorded this deed of release in St. Louis County on May 2. The deed of trust for the 2006 loan was not recorded until July 11, 2006. New Century assigned the 2006 deed of trust to U.S. Bank on November 23, 2009, and U.S. Bank subsequently recorded the assignment.

Starting in November 2005, the Internal Revenue Service ("IRS") began to assess unpaid income taxes against Josh Tolin from tax years 2001, 2002, 2004, and 2006, totaling more than $700,000. The IRS assessed the 2004 taxes that are at issue in this case on November 21, 2005 and recorded a notice of federal tax lien in St. Louis County related to those taxes on March 30, 2006.

The Government initiated the instant suit in 2013, seeking to reduce to judgment the unpaid federal tax liabilities assessed against Josh Tolin, to foreclose on federal tax liens encumbering the Ballwin property, and to have the proceeds from the foreclosure sale distributed in the amounts determined by the court. Josh Tolin conceded the tax liabilities, and Kimberly Tolin disclaimed any interest in the property. After all competing claims to the property except U.S. Bank's were resolved, the Government moved for summary judgment regarding the priority of its tax lien for unpaid 2004 taxes against U.S. Bank's 2006 deed of trust. The Government argued that, under Internal Revenue Code §§ 6323(a) and (h)(1), its 2004 tax lien had priority over U.S. Bank's lien because notice of the tax lien was recorded on March 30, 2006—more than three months before the 2006 deed of trust

-3-

was recorded on July 11, 2006. U.S. Bank also moved for summary judgment, arguing that, because the 2006 loan merely refinanced the 2004 loan, the 2006 deed of trust retained the priority of the 2004 deed of trust for the $277,000 amount of the 2004 loan.

The district court granted summary judgment for the Government, finding that the 2006 deed of trust did not retain the priority of the 2004 deed of trust because the 2004 deed of trust had been released more than two months before the 2006 deed of trust was recorded. The 2006 deed of trust thus did not replace the 2004 deed of trust as part of the transaction that released the earlier deed of trust. The court reasoned that, when the 2004 deed of trust was released on May 2—after the Government had recorded the 2004 tax lien on March 30—there no longer existed a lien on the Ballwin property traceable to the 2004 loan, and the 2006 deed of trust could not revive the priority of the 2004 deed of trust after such a lengthy gap between the time the 2004 deed of trust was released and the time the 2006 deed of trust was recorded. Additionally, the court found that the significant, $89,350 increase in principal over the 2004 loan, used in part to pay off other creditors of the Tolins, meant that the 2006 loan was not merely a refinance of the prior loan.[2] The court thus awarded priority to the Government's 2004 tax lien over U.S. Bank's interest arising from the 2006 deed of trust. U.S. Bank now appeals.

---

[2]U.S. Bank concedes that the $89,350 increase in principal is subordinate to the Government's tax lien. *See Burney v. McLaughlin*, 63 S.W.3d 223, 232 (Mo. Ct. App. 2001) ("[W]here the modification entails an increase in . . . principal amount, the junior lienor will gain priority over the earlier mortgage to the extent of the modification." (alteration in original) (quoting 1 Grant S. Nelson et al., *Real Estate Finance Law* § 9.4 (3d ed. 1993))).

II.

We review *de novo* a district court's grant of summary judgment. *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677 (8th Cir. 2013). Summary judgment is appropriate only when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 874 (8th Cir. 2011).

The dispute in this case turns on whether the 2006 deed of trust retained the priority of the released 2004 deed of trust. The district court determined that it did not. The "priority [of liens] for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *Minn. Dep't of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir. 1999) (quoting *United States v. McDermott*, 507 U.S. 447, 449 (1993)). The "time" for assessing priority "depends on the time the lien attached to the property in question and became choate." *Id.* (quoting *Cannon Valley Woodwork, Inc. v. Malton Const. Co.*, 866 F.Supp. 1248, 1250 (D. Minn. 1994)). Although federal tax liens attach and become choate at assessment, 26 U.S.C. § 6322, a state-created lien, such as a deed of trust securing a mortgage loan, "is 'choate' for 'first in time' purposes only when it has been 'perfected' in the sense that there is nothing more to be done, *i.e.*, when 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established,'" *Minn. Dep't of Revenue*, 184 F.3d at 728 (quoting *United States v. City of New Britain*, 347 U.S. 81, 84 (1954)). Under Missouri law, perfection of a deed of trust occurs when it has been recorded in the office of the recorder in the county where the property is located. Mo. Rev. Stat. §§ 442.380, 442.390; *see Reed v. Austin's Heirs*, 9 Mo. 722, 730 (1846) ("As far back as the year 1835, this court determined that a title under a junior judgment would prevail over a prior unregistered deed.").

In chronological order, the relevant dates for assessing the choateness of the competing interests consist of the date the 2004 deed of trust was recorded (March 29, 2004), the date the Government's tax lien for unpaid 2004 taxes was assessed (November 21, 2005), and the date the 2006 deed of trust was recorded (July 11, 2006). In this sequence, normally, the 2004 deed of trust would have priority over the tax lien for unpaid 2004 taxes, and the 2006 deed of trust would be last in priority. U.S. Bank argues, however, that the 2006 deed of trust has the priority of the released 2004 deed of trust because the 2006 loan merely refinanced the 2004 loan. Complicating matters, however, is the fact that the 2004 deed of trust was released on May 2, 2006—over two months before the 2006 deed of trust was recorded on July 11, 2006.

"Generally, when a higher priority deed of trust is released, the next in priority moves up in priority." *Golden Delta Ents., LLC v. U.S. Bank*, 213 S.W.3d 171, 175 (Mo. Ct. App. 2007). Under this principle, the release of the 2004 deed of trust would have allowed the Government's tax lien to ascend to first priority. However, Missouri has adopted a provision from the Restatement of Property that outlines an exception to this general rule:

> If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except . . . to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate.

*Id.* at 176 (quoting Restatement (Third) of Property: Mortgages § 7.3 (1997)). Applying this principle, when the 2004 deed of trust was released on May 2, 2006 the Government's 2004 tax lien—recorded on March 30, 2006—ascended in priority, unless the 2006 loan replaced the 2004 loan as part of the same transaction that released the 2004 loan.

U.S. Bank maintains that the 2006 loan should be considered a replacement mortgage for the 2004 loan because, under the Restatement provision, the 2004 deed of trust was replaced by the 2006 loan and deed of trust "as part of the same transaction" that released the 2004 deed of trust, despite a gap of more than two months between the release of the 2004 deed of trust and the recordation of the 2006 deed of trust. However, Missouri does not stretch the notion of "same transaction" as far as U.S. Bank would have us stretch it here. In Missouri, determining whether the release of an old deed of trust and subsequent recordation of a new deed of trust form part of the same transaction requires assessing whether the release and recordation occurred contemporaneously. *Greenfield v. Petty*, 145 S.W.2d 367, 370 (Mo. 1940) ("It is the general rule that where a holder of a senior mortgage discharges it of record, *and contemporaneously* takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless it was his intention to do so.") (emphasis added); *see also Breit v. Bowland*, 127 S.W.2d 71, 74 (Mo. Ct. App. 1939) (senior priority carried from a first deed of trust to a subsequent deed of trust of nearly equal amount and similar interest rate when the release of the first and recording of the subsequent deed occurred on the same date, making them "approximately contemporaneous acts" and thus inviting the presumption that the parties intended a continuance of the same security).

Here, however, we cannot consider the release of the 2004 deed of trust and recordation of the 2006 deed of trust to have occurred "contemporaneously"—or even "approximately contemporaneous[ly]"—under the law, as exemplified by the cases U.S. Bank attempts to cite as support. In *Breit*, for example, the court found "approximately contemporaneous acts" when the new deed of trust was recorded on the same date as the old deed of trust was released. *Id.* In *Golden Delta*, the new deed of trust was recorded two weeks before the old deed of trust was released. 213 S.W.3d at 175. In *DeWees v. Stoup*, the new deed of trust was recorded on the same date as the old deed of trust was released, 494 S.W.2d 372, 373 (Mo. Ct. App. 1973)—so, too, in *Construction Equipment Management, Inc. v. Dunhill*

*Development Corporation*, 892 S.W.2d 639, 644 (Mo. Ct. App. 1994). Further, in each of these cases, the new deed of trust was recorded before or on the same date as the old deed of trust was released—never after the old deed of trust was released. This distinction is significant. Once released of record, the lien related to the 2004 deed of trust was no longer perfected for priority purposes. *See Rehm v. Alber*, 199 S.W. 170, 173 (Mo. 1917) (release of deed of trust "destroy[s] the constructive notice which it formerly imparted, to the effect that it was a prior lien on [the] lot"); *In re Sommerville*, 334 B.R. 918, 921 (Bankr. E.D. Mo. 2005) (lien no longer perfected once released by a signed and recorded deed of release). Here, given the more-than-two-month period between when the 2004 deed of trust was released and when the 2006 deed of trust was recorded, the district court correctly determined that the release extinguished the lien based on the 2004 loan and that the delayed recordation of the 2006 deed of trust did not revive the released lien. The release-first sequencing thus combines with the lengthy gap in recording to prevent us from considering the release of the 2004 deed of trust and recordation of the 2006 deed of trust to have occurred sufficiently contemporaneously to be part of the same transaction.

U.S. Bank conceded at oral argument that it would have been better practice for New Century not to have allowed such a long gap, but it nevertheless maintained that no harm ensued between the May 2 release of the 2004 deed of trust and the July 11 recordation of the 2006 deed of trust. We disagree. U.S. Bank's predecessor in interest failed to take any precaution against such a significant gap, despite being on notice at the time of release of the 2004 deed of trust that the Government had recorded the tax lien for unpaid 2004 taxes. *See Sugg v. Duncan*, 142 S.W. 321, 322 (Mo. 1911) (recordation of a deed results in constructive notice of that deed under the recording statute); Mo. Rev. Stat. § 442.390. As a result, anyone who had conducted a title search on the Ballwin property during the period between the release of the 2004 deed of trust and recordation of the 2006 deed of trust would not have known of the existence of the 2006 deed of trust. Allowing U.S. Bank to stretch the notion of "same transaction" to include a more-than-two-month gap between release of an

old deed of trust and recordation of a new one would undermine the integrity of the recording statute, which seeks to "impart notice to all persons of the contents [of the instrument recorded]." Mo. Rev. Stat. § 442.390. We decline to overlook such careless practice.[3]

Accordingly, because no genuine issue of material fact remains as to whether the 2006 deed of trust retained the priority of the released 2004 deed of trust, the district court did not err by granting summary judgment to the Government.

III.

For the reasons set forth above, we affirm.

---

[3]U.S. Bank argues that our conclusion would ignore "the truth" of the refinance transaction. Similarly, the dissent suggests that further inquiry into the parties' intent could overcome the dispositive weight we place on the lengthy recording gap present here. Neither the dissent nor U.S. Bank, however, points to any disputed fact that would necessitate this inquiry. To the contrary, as U.S. Bank acknowledged in its opening brief, "[i]n the trial court, the parties agreed that no questions of material fact were in dispute and requested that the court resolve the matter on summary judgment. The same is true on appeal . . . ." In any event, none of the cases cited by the dissent suggest facts that could establish intent to retain the priority of a released mortgage in the absence of contemporaneous recording of the new mortgage. *See, e.g.*, *DeWees*, 494 S.W.2d at 374 (basing the intent determination on the contemporaneousness of the dates of release and subsequent recordation); *see also Golden Delta*, 213 S.W.3d at 178 (remanding for further factfinding on such matters going toward intent as the amount of the outstanding balance of the released loan and whether the proceeds of the refinancing loan were used to pay down another line of credit—but doing so only *after* determining that the release of the prior deed and recordation of the new deed occurred sufficiently contemporaneously).

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. The court correctly states that the question is whether New Century's 2006 deed of trust retained the first priority of the 2004 deed of trust, which New Century released of record two months before recording the 2006 deed of trust. But, contrary to our obligation as a federal court in diversity cases, the court ignores both the origin of the equitable doctrine the Supreme Court of Missouri would apply to this issue, and the factual inquiry Missouri appellate courts have consistently required. Applying these controlling precedents, I conclude the district court erred in granting summary judgment awarding priority to the government's intervening tax lien. I would remand the case for trial.

The court's critical error was to begin its analysis by declaring that "Missouri has adopted" § 7.3(a)(1) of the Restatement of the Law (Third) Property: Mortgages, supra p.6. The Mortgages subpart of the Restatement of the Law Property did not exist until 1997, decades after the Supreme Court of Missouri established the equitable principle here at issue. Section § 7.3(a)(1) is generally consistent with Missouri law and thus has been described by the Missouri Court of Appeals as "concisely stat[ing]" Missouri law. Golden Delta Ents. LLC v. US Bank, 213 S.W.3d 171, 176 (Mo. App. 2007). But stating Missouri law in this manner caused the court to ignore the factual focus mandated by the Supreme Court of Missouri.

The Supreme Court of Missouri adopted the equitable replacement-mortgage doctrine in Greenfield v. Petty, 145 S.W.2d 367, 370-71 (Mo. 1940):

> It is the general rule that where the holder of a senior mortgage discharges it of record, and contemporaneously takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless it was his intention to do so. . . . "Ordinarily the mere substitution of one form of security for another which has been released or discharged does not, in

-10-

and of itself, establish the intent of the parties to accept the latter security as full payment for the earlier, where the result would be a loss of priority of lien." 98 A.L.R. 846.

[T]he question of the actual release and discharge of the old mortgage is, according to the equitable doctrines relevant here, one of intent and that intent is a question of fact.

\*     \*     \*     \*     \*

[W]e must look at all the records. At the same time the old mortgage was released a new mortgage . . . was placed of record. Under the law the release itself was not conclusive notice of either payment or discharge of the old mortgage. The contemporaneous recording of the new mortgage gives rise to a presumption of a contrary intent -- one to preserve and continue the priority of the superior lien.

The fact-based principles established in Greenfield -- that the critical question is the intent of the parties to a refinancing transaction, and that the contemporaneous recording of a new mortgage *gives rise to a presumption* of the intent to retain priority -- have guided all published Missouri Court of Appeals cases that have applied Greenfield's replacement-mortgage doctrine. See DeWees v. Stoup, 494 S.W.2d 372, 374 (Mo. App. 1973) ("intent with which a real estate mortgage is released and *not notice* governs in determining whether the mortgage is extinguished as to the junior lien"); Golden Delta, 213 S.W.3d at 176 (remanding for further findings needed to determine lien priority); Constr. Equip. Mgmt., Inc. v. Dunhill Dev. Corp., 892 S.W.2d 639, 644-45 (Mo. App. 1994) ("the recording of a new mortgage contemporaneously with the release of an old mortgage securing the same indebtedness creates a presumption of an intent to preserve the priority of the first mortgage"); accord Breit v. Bowland, 127 S.W.2d 71, 74 (Mo. App. 1939) (a prior Court of Appeals decision cited favorably in Greenfield, 145 S.W.2d at 371). In *every one* of these cases, the appellate court reviewed this issue on a trial record.

-11-

Absent from the district court's decision -- and now this court's decision -- is an analysis of what New Century and the Tolins intended when they released the 2004 deed of trust and replaced it with the 2006 deed of trust. Instead, focusing on the Restatement's articulation of the doctrine -- which is not Missouri law -- the court concludes that release of the 2004 deed of trust and recording of the 2006 deed of trust were not "part of the same transaction" because they were not sufficiently "contemporaneous." This analysis is contrary to Missouri law. First, if intent to preserve first-lien priority is the critical issue, the "same transaction" question must focus on the refinancing transaction, not on the recording of the deeds of trust resulting from that transaction. There is little evidence in this summary judgment record of what New Century and the Tolins intended when the new note and deed of trust were executed on March 24, 2006, *before* the government's notice of federal tax lien had been recorded.

Second, the court converts a *presumption* under Missouri law -- that contemporaneous recording of a new mortgage reflects the intent to *retain* priority -- into a rule that the absence of facts triggering the presumption means that priority *was not retained as a matter of law*. Even if the recording of the new deed of trust was not sufficiently contemporaneous to trigger the presumption, which is a disputed issue of fact, there may be reasons for the time gap that do not preclude a finding of intent to retain lien priority, such as the apparent absence of competing liens, or simply a mistake, negligent or otherwise, that did not prejudice the government's junior lien.[4]

Third, the court rules that, because the gap in time between release of the 2004 deed of trust and recording of the 2006 deed of trust was greater than in any prior

---

[4]As the court notes, the replacement-mortgage doctrine applies only to the extent an intervening lienholder is not prejudiced. U.S. Bank concedes that the $89,350 increase in the amount secured by the 2006 deed of trust is subordinate to the government's tax lien.

Missouri decision, this establishes loss of lien priority *as a matter of law*. No Missouri case suggests that the fact-intensive question of whether the holder of a discharged senior lien retained lien priority by "contemporaneously tak[ing] a new mortgage," Greenfield, 145 S.W.2d at 370, can be resolved by looking at the number of days between release and recording, without regard to other facts relevant to the intent to retain priority.

The Restatement does not speak to the issue of what is a contemporaneous transaction. The Illustrations to § 7.3 simply recite that "[t]he latter mortgage is promptly recorded," leaving this fact question to state law. The Introductory Note states that "construction lenders . . . sometimes release the construction mortgage of record and either immediately *or within a short period* record a permanent mortgage." (Emphasis added.) Section 7.3(a)(2) explains that a replacement mortgage will not retain priority if "one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record." These entries confirm that the court's emphasis on "release-first sequencing" conflicts with the Restatement's general rule, as well as with Missouri's pre-existing equitable doctrine. See Greenfield, 145 S.W.2d at 370 ("the release of a mortgage is not conclusive as to its discharge"); DeWees, 494 S.W.2d at 374 ("intent . . . and *not notice* governs . . . whether the mortgage is extinguished as to the junior lien").

The record on appeal reveals conflicting evidence of the parties' intent, and no factual findings by the district court on that issue. Missouri courts have looked to a variety of factors in discerning intent. On this summary judgment record, I conclude the court errs in ruling on a fact-intensive issue that has never been decided on less than a trial record by the Missouri appellate courts. I would reverse the grant of summary judgment and remand to the district court for further proceedings.

_____

-13-